[Civ. No. 15873. Fourth Dist., Div. Two. Feb. 22, 1977.]

In re the Marriage of FLORA D. and THOMAS G. BRANTNER.
FLORA D. BRANTNER, Appellant, v.
THOMAS G. BRANTNER, Respondent.

**COUNSEL**

Thomason & Thomason and Jacquelyn D. Thomason for Appellant.

MacCabe & George and William J. MacCabe for Respondent.

## Opinion

**GARDNER, P. J.**—In an action for dissolution of marriage wife appeals from that portion of the interlocutory judgment which provides for automatic reduction and eventual termination of spousal support.

The parties had been married for 25 years. They had acquired a modest amount of community property—basically, an equity in a home, some furniture and furnishings and the usual two cars. By stipulation, the proceeds from the sale of the home were divided after the payment of attorneys' fees and substantial community debts. The meager balance of community assets was divided by stipulation. No issue is made concerning the division of community property.

The parties have 2 children, both girls, age 14 and 16. By stipulation, custody of the children was awarded to the wife and, again by stipulation, husband was ordered to pay wife $100 per month, per child, for their support and also ordered to keep the girls on his company's health insurance program. Again, no issue is made concerning the custody award or the amount of child support ordered.

During the 25 years of marriage, husband has been the family breadwinner. He is now 45 years of age, employed by Hughes Aircraft Company, and has a gross monthly income of $1,578.

In regard to spousal support, the court ordered $200 per month for two years, $150 per month for two years, $100 per month for two years, $50 per month for two years, and $1 per month for four years. Thereafter, spousal support is to terminate.

While the notice of appeal covers the order for spousal support in its entirety, no issue is made on appeal in regard to the current support in the amount of $200 per month. While the $200 per month may appear niggardly and it may appear odd that a man earning $1,578 per month is permitted to fulfill his familial responsibilities by paying $400 per month for the support of his unemployed wife and two teenage daughters, wife makes no issue of this aspect of the order on appeal. This is probably because that portion of the order is merely a continuation of a stipulated order made on an earlier order to show cause. Under these circumstances, the wife probably recognizes that it would be difficult to establish an abuse of discretion. Therefore, we address ourselves only to the graduated order and its termination.

Wife's employment picture is bleak. She is 44 years of age and has not even completed high school. She has no apparent job skills. She has made eight efforts for employment as a salesperson, all of which were unsuccessful. She is attending a two-year junior college class which she describes as a "guidance class for someone my age that has not had any employment, and I would like to be able to try for something if I do lose my eyes completely. The blind do work and have employment." This latter comment refers to the fact that the wife testified that she suffers from an incurable iritis in both eyes with the possibility of becoming blind in the near future. Furthermore, she is an arthritic. Thus, the dreary picture is presented of an unemployed and currently unemployable woman, 44 years of age, facing the possibility of becoming blind, who is confronted with a court order which reduces her spousal support to a mere pittance for the next 12 years with complete termination thereafter. Thus, when this lady is 56 years of age (and perhaps blind), there is a substantial likelihood that she will become an object of charity. The husband's only response is that an order providing for progressive decrease and termination of spousal support is addressed to the sound discretion of the trial court and that such an order is only to be disturbed if there has been an abuse of discretion. There has been.

DISCUSSION

I

The new Family Law Act, and particularly Civil Code, section 4801, has been heralded as a bill of rights for harried former husbands who have been suffering under prolonged and unreasonable alimony awards. However, the act may not be used as a handy vehicle for the summary disposal of old and used wives. A woman is not a breeding cow to be nurtured during her years of fecundity, then conveniently and economically converted to cheap steaks when past her prime. If a woman is able to do so, she certainly should support herself. If, however, she has spent her productive years as a housewife and mother and has missed the opportunity to compete in the job market and improve her job skills, quite often she becomes, when divorced, simply a "displaced homemaker."[1]

---

[1]The Legislature, belatedly recognizing the social problem presented by the middle aged displaced homemaker, enacted Government Code, section 7300 et seq. in 1975. These sections establish a pilot program for counseling and training "homemakers" over 35 years of age who have been "displaced" by loss of their source of support through "divorce, death of spouse or other loss of family income".

In the case at bench we are faced with a woman who, during the last 25 years, has borne 2 children and confined her activities to those of a mother and housewife. These activities, vital though they may be, do not qualify her to embark on a lucrative career in the highly competitive job market. Had she not been married those 20-odd years, she might now be well qualified as a typist, truck driver or tinsmith. Opportunities for developing skills in those fields were denied her when she, and presumably her husband, decided that she would follow that most important but somewhat nonglamorous and definitely nonsalaried occupation of housewife and mother. Assuming she does not become blind, her experience as a homemaker qualifies her for either of two positions, charwoman or babysitter. A candidate for a well paying job, she isn't.

At the time this order was made, Civil Code, section 4801, subdivision (a), provided that the court could order a party to pay for the support of the other party ". . . any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment . . . ."[2] All this language really does is to codify the thinking processes of innumerable trial judges throughout the years. A marriage license is not a ticket to a perpetual pension and, as women approach equality in the job market, the burden on the husband will be lessened in those cases in which, by agreement of both parties, the wife has remained employed or at least has had the opportunity to maintain and refresh her job skills during marriage. However, in those cases in which it is the decision of the parties that the woman becomes the homemaker, the marriage is of substantial duration and at separation the wife is to all intents and purposes unemployable, the husband simply has to face up to the fact that his support responsibilities are going to be of extended duration —perhaps for life. This has nothing to do with feminism, sexism, male chauvinism or any other trendy social ideology. It is ordinary common-sense, basic decency and simple justice.

This problem has faced the courts in a series of cases and, evaluated on their facts, the courts have been fairly consistent in recognizing the realities of this situation and affording the displaced homemaker reasonable security although, as we shall see, a minor schism has developed in one aspect of the problem. (See *In re Marriage of Kelley,* 64

---

[2]The parallel provisions of the 1976 amendment to Civil Code, section 4801, *supra,* are quoted *infra.*

Cal.App.3d 82 [134 Cal.Rptr. 258] [Second Dist., Div. Four]; *In re Marriage of Holmgren*, 60 Cal.App.3d 869 [130·Cal.Rptr. 440] [First Dist. Div. Four]; *In re Marriage of Wright*, 60 Cal.App.3d 253 [131 Cal.Rptr. 870] [Second Dist., Div. Five]; *In re Marriage of Kuppinger*, 48 Cal.App.3d 628 [120 Cal.Rptr. 654] [Second Dist., Div. Five]; *In re Marriage of Lopez*, 38 Cal.App.3d 93 [113 Cal.Rptr. 58] [Third Dist.]; *In re Marriage of Patrino*, 36 Cal.App.3d 186 [111 Cal.Rptr. 367] [First Dist., Div. Two]; *In re Marriage of Dennis*, 35 Cal.App.3d 279 [110 Cal.Rptr. 619] [Second Dist., Div. Five]; *In re Marriage of Cosgrove*, 27 Cal.App.3d 424 [103 Cal.Rptr. 733] [Second Dist., Div. Two]; *In re Marriage of Rosan*, 24 Cal.App.3d 885 [101 Cal.Rptr. 295] [Fourth Dist., Div. Two].)

■ From these cases some basic concepts emerge:

(1) While the legislative policy is that wherever possible orders for spousal support be for a time certain and terminate at the end of the period specified (Civ. Code, § 4801, subd. (d)); nevertheless,

(2) Orders for support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence and not upon mere hope or speculative expectations since any other rule would lend itself to erratic subjectivity (*Rosan, supra,* at p. 896); and,

(3) After a lengthy marriage retention of jurisdiction to modify spousal support should be the norm and the burden of proof of justification for terminating the order should be on the party seeking termination (*Dennis, supra,* at p. 285).

This latter rule was "gently questioned" (*Wright, supra,* at p. 257) in *Patrino* and in *Lopez.* However, the "gentle questioning" of *Patrino* and *Lopez* was effectively answered in a thorough and critical analysis in *Kelley.* In the interest of judicial economy, we shall not repeat that analysis.

However, we would add these last thoughts:

(1) One of the *Patrino-Lopez* grounds of worry was that failure to make spousal support in certain terms with a definite date of termination would hamper post-dissolution economic stability. While there is certainly merit to this thought in the abstract it may not be used in such a way as to effect an injustice.

(2) Another ground of worry was that failure to establish a firm time limit on spousal support would cause additional use of court time in unnecessary hearings re modification. Again, we quite agree that any procedure which reduces the amount of courtroom litigation is thoroughly commendable—in the abstract. However, this concept, too, has its limitations. While the speedy disposition of cases is desirable, speed is not always compatible with justice. Actually, in its use of courtroom time the present judicial process seems to have its priorities confused. Domestic relations litigation, one of the most important and sensitive tasks a judge faces, too often is given the low-man-on-the-totem-pole treatment, quite often being fobbed off on a commissioner. One of the paradoxes of our present legal system is that it is accepted practice to tie up a court for days while a gaggle of professional medical witnesses expound to a jury on just how devastating or just how trivial a personal injury may be, all to the personal enrichment of the trial lawyers involved, yet at the same time we begrudge the judicial resources necessary for careful and reasoned judgments in this most delicate field—the breakup of a marriage with its resulting trauma and troublesome fiscal aftermath. The courts should not begrudge the time necessary to carefully go over the wreckage of a marriage in order to effect substantial justice to all parties involved. The handling of this case, which involved the breakup of a 25-year marriage, the custody of 2 teenage girls, the disposition of all of the property accumulated during that marriage, and the plotting of the fiscal future of the entire family, is illustrative. Judged by the brevity of the record, not more than 15 minutes of the court's time on a busy Friday afternoon short-cause calendar were involved. The wheels of justice will not come to a screeching halt if 2 years hence another 15 minutes of valuable court time is consumed in bringing the court up to date on the fiscal condition of the parties.

(3) The 1976 amendment to Civil Code, section 4801, indicates that the Legislature has given this subject serious thought and determined that some objective standards should be established. Thus, as now written, Civil Code, section 4801, provides that the court in making an order for spousal support shall consider:

"(1) The earning capacity and needs of each spouse.

"(2) The obligations and assets, including the separate property, of each.

"(3) The duration of the marriage.

"(4) The ability of the supported spouse ·to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.

"(5) The time required for the supported spouse to acquire appropriate education, training and employment.

"(6) The age and health of the parties.

"(7) The standard of living of the parties.

"(8) Any other factors which it deems just and equitable."

Hopefully, a realistic application of these standards will cut down on the rather extensive appellate library which has been developing in this field.

## II

But, protests the husband, this order is for a "period equal to one-half of the married life of the parties." This is advanced in tones of shocked anguish as though questioning such an order is an attack on motherhood, democracy or apple pie. However, there is nothing talismanic about the "one-half of the married life" concept. It is not an eternal verity or an immutable principle carved in legal stone or etched in judicial steel. It fits some cases, it doesn't fit others. In some cases the wife is not entitled to a dime. In other cases she must be supported for life. Each and every case must be judged on its own merits. A judicial policy cannot be tolerated which affords blind obedience to the idea that the support order be for a period equal to "one-half of the married life." In each case the trial court must make a careful and measured judgment reflecting a sound exercise of discretion in the award of spousal support and its duration. That discretion, we repeat, must be based on facts and reasonable inferences to be drawn from these facts. A support order for "one-half of the married life" is not some kind of a universal panacea.

Insofar as the instant case is concerned, we do not hold that the husband must support wife for the rest of her natural life. Neither do we find that wife is going to be permanently unemployable. Rather, we face

the fact that in seeking employment, she has substantial handicaps and the outcome is unpredictable. Under these circumstances, it was an abuse of discretion for the court to make the type of order it did re future support.

## DISPOSITION

We find an abuse of discretion in that portion of the order reducing spousal support after the first 2 years and terminating it after 12 years. Therefore, the interlocutory judgment is affirmed with respect to the provision for spousal support in the sum of $200 for the next two years. The judgment is reversed with respect to the provision reducing payments for such support for the next 10 years and terminating them entirely thereafter. The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The court is directed to retain jurisdiction over spousal support.

Tamura, J., and Kaufman, J., concurred.