Debra Susan MAHONEY, Plaintiff and Appellee,

v.

Timothy James MAHONEY, Defendant and Appellant.

Civ. No. 930349CA.

Court of Appeals of North Dakota.

May 10, 1994.

657

Jonathan T. Garaas (argued) of Garaas Law Firm, Fargo, for plaintiff and appellee.

Randolph E. Stefanson (argued) of Stefanson, Landberg & Plambeck, Moorhead, MN, for defendant and appellant.

RALPH J. ERICKSTAD, Chief Surrogate Judge.

Timothy James Mahoney appeals from an order denying his motion to modify spousal and child support. He also appeals from the trial court's refusal to rule on his motion for

reconsideration. We reverse the order denying the motion to modify and remand for further proceedings.

A September 1992 judgment granted Debra Susan Mahoney a divorce from Timothy after a 15-year marriage. Debra was awarded custody of the couple's three children: Ryan, Kaileen, and Colin. The trial court estimated Timothy's 1992 gross annual income as a surgeon at Dakota Clinic in Fargo to be $242,100, including $30,000 in contributions for his "pension/profit sharing" plan. At the time of the July 1992 divorce trial, Timothy's gross monthly pay was $15,800 and net monthly pay was $10,890. After trial, but before entry of judgment, Timothy informed the court by affidavit that he had submitted his resignation to Dakota Clinic on August 1, 1992, effective at the end of October 1992, and that he would be ineligible to receive the clinic's profit sharing distribution at the end of the year.

The divorce judgment ordered Timothy to pay child support of $4,080 per month, and spousal support of $2,000 per month for a period of four years. After entry of judgment, the parties entered into a stipulated agreement waiving their rights to appeal from the judgment.

In May 1993, Timothy moved to reduce his child support and spousal support obligations on the ground that "there has been a significant change in his financial circumstances...." In an affidavit, Timothy again informed the court that he had resigned from Dakota Clinic effective October 1992 and had started his own practice with two other surgeons who also had been employed at the clinic. Timothy explained that because those two surgeons resigned from the clinic, if he had stayed he would have had "to be working under an extremely burdensome schedule at a time when I was attempting to spend significantly more time with my children during visitation." He said that he had "philosophical and ethical differences with Dakota Clinic regarding the need for research and the type of work load which we were expected to carry," and that a psychologist he was seeking assistance from "strongly advised me to make changes in my career."

Timothy stated that he started his new practice on November 1, 1992, sharing overhead and call responsibility with the other two physicians. According to Timothy, they practice under the "umbrella" of Surgical Associates and each of them contributed $45,000 "to start up the group." Timothy stated that none of the physicians "took a salary initially" and that he "hope[d] to start drawing a salary in June 1993." Each physician passed corporate resolutions limiting his salary to $5,000 per month and Timothy stated that each "decided that the practices will not be able to support a higher salary for at least two years."

Timothy stated that since starting his own practice, he has been meeting his living expenses and paying the child and spousal support obligations solely by depleting his savings and a $24,000 inheritance from his mother's estate. Timothy said it was "impossible" for him to continue paying the child and spousal support ordered by the court and that he did not expect to "ever achieve the income levels which the court predicted." But Timothy said he believed his new practice "will be better for me in the long run" because he would be able "to control my hours such that I can exercise my visitation with my children," and because it would "allow me to achieve personal goals that could not be reached at Dakota Clinic." Timothy also stated that the new practice "will allow me to better control my overhead and thus deal with the significant changes in medical reimbursement rates." According to Timothy, reimbursement rates for surgeons under the Medicare program, which accounts for 50 percent of his practice, have dropped 66⅔ percent since April 1992 and "Blue Cross/Blue Shield of North Dakota will be cutting reimbursement for all specialities by 20 percent starting June 1, 1993." Timothy submitted a financial statement and requested that the court decrease his child support obligation to the guideline amount of $1,368 per month and decrease his spousal support obligation to $500 per month, even though "this level of support would still require that I deplete assets in order to meet my monthly expenses...." Timothy also presented an affidavit from his accountant who stated that during early 1993, Timothy's practice had

"insufficient cash flow for him to take a $5,000 per month salary."

Debra resisted Timothy's motion to modify the divorce decree and moved for a continuance, claiming that Timothy's discovery responses were not complete and that additional time was required to prepare for the hearing. Debra also presented an affidavit disputing Timothy's financial representations and claiming that any change of circumstances is "voluntary" and a "sham."

At the hearing on the motion, Timothy's attorney rested on the information contained in the affidavits. After hearing argument of counsel, the trial court denied both Debra's motion for continuance and Timothy's motion to modify the divorce judgment. The court determined that "there is not a material substantial change in circumstances," explaining:[1]

"What happened here was that [Timothy] has decided to open his private practice. He did not approach the Court beforehand, as he should have, and gotten an answer. And instead, he went ahead to open his private practice. He loaned $45,000 to his private practice. Now he complains that his assets are more or less depleted, even an inheritance from his mother of $24,000. He felt that his schedule at Dakota Clinic was going to be burdensome. He wanted to spend more time with his children. He had some type of philosophical difference with the clinic regarding research and the type of work load he would be carrying. He wishes to be a specialist, I think it is, in vascular surgery and contends that he couldn't do that there. So in October of 1992, he resigned from the clinic.... At the same time that he indicates that it's in the best interest of his children to make this move, he wishes to reduce their child support by—to almost a third of what he's paying now. This voluntary move is certainly one of the most arrogant things I have seen done in a long time, in what is an apparent attempt to satisfy his own feelings and with regard to his situation and deprive his children and his former spouse of what the Court has declared

rightly to be [theirs].... He indicates that he depleted his savings and other items of that, and the Court also finds [Timothy] knew when he made the move that he was obligated on all of these support items, and yet he did so without approaching the Court. There might have been a way to do it in some proper manner if he had approached the Court in the first place, but he chose voluntarily not to do that.... All of these things that [Timothy] wants to do are for himself. As I indicated, it's rather a hedonistic move that he's made to the expense of ... his former spouse and children.

\* \* \* \* \* \*

"I think, and it also just seems to me that it's just common sense, you don't have to be a legal beagle or a lawyer to realize that when you have a judgment and it says, 'This is what you pay to take care of your children. This is what you owe your former spouse until she can get on her feet,' you don't just run out there and do what you want to do and then wipe that all out and then ask forgiveness. It seems to me, the business way to proceed, the common sense way to proceed, and the passion and moral way to proceed is to approach the Court with it and see if something can be worked out. That wasn't done in this case."

To ensure Timothy's compliance with his support obligations, the trial court imposed an immediate income withholding order and placed a lien on his Dakota Clinic Retirement Plan. The court directed the retirement plan administrator to make monthly payments to the clerk of district court to satisfy the support obligations unless Timothy provided the administrator with receipts from the clerk showing full payment. The court further ordered Timothy to be "solely responsible" for all taxes and penalties imposed by law for withdrawal of money from his retirement account.

Timothy substituted counsel and moved for reconsideration of the trial court's denial of the motion to modify, presenting additional

---

1. The order denying Timothy's motion to modify "specifically incorporates by reference" the trial court's oral findings and conclusions made at the hearing.

affidavits to the court. Before the motion was to be heard, the trial judge's office informed Timothy that the hearing was cancelled and that the judge would not issue an order on the motion for reconsideration. Timothy appealed from the order denying his motion to modify and from the trial court's "refusal to hear or rule upon" his motion for reconsideration.

## I

■ Debra asserts that Timothy has no right to appeal from the trial court's order denying the motion for modification of the divorce decree because "Timothy could have brought another motion based upon the Trial Court's continuing jurisdiction" under § 14-05-24, N.D.C.C. Debra's position, which would effectively shield all modification proceedings from appellate review, finds no support in the law.

Section 14-05-25, N.D.C.C., provides in part that "all orders and decrees touching the alimony and maintenance of either party to a marriage and for the custody, education, and support of the children *are subject to revision on appeal in all particulars ....*" [Emphasis added]. This statute has been construed as authorizing an appeal from a temporary support order. *See Keller v. Keller,* 158 N.W.2d 694, 696-697 (N.D.1968); *Albrecht v. Albrecht,* 99 N.W.2d 229, 236-237 (N.D.1959). An order denying modification of spousal and child support obligations is certainly an order "touching the alimony and maintenance of either party to a marriage and for the ... support of the children" within the meaning of § 14-05-25. We have jurisdiction to consider Timothy's appeal from the order denying his motion for modification. *See, e.g., Burrell v. Burrell,* 359 N.W.2d 381, 382 (N.D.1985) [affirming order denying motion for modification of child and spousal support].

Debra also asserts that Timothy has no right to appeal from the trial court's refusal to rule on his motion for reconsideration because no motion for reconsideration is specifically authorized by our procedural rules and because no appeal can be taken from an order that does not exist. Timothy argues that his motion for reconsideration is authorized by Rule 60(b), N.D.R.Civ.P., and that we should treat the court's refusal to issue an order as an order denying the motion for reconsideration.

■ We recommend that, regardless of whether a motion for reconsideration is technically authorized by the rules of civil procedure, a trial court should, at a minimum, rule on such a motion and issue an appropriate written order.[2] Issuing a written order, however brief, would assist the parties in determining matters of finality for purposes of an appeal and also avoid burdening an appellate court with wholly unnecessary jurisdictional questions. However, our disposition of this case makes it unnecessary to resolve this appealability question. Even if the motion for reconsideration and the evidence presented in support of it are not properly before us, the result would not change. In reaching our decision on the merits, we do not consider the additional evidence presented to the trial court by Timothy in conjunction with his motion for reconsideration.

## II

Timothy asserts that the trial court erred in denying his motion for modification of the divorce decree. We agree.

■ Depending on the cause of the change, a trial court may modify awards of child support and spousal support when a material change in financial circumstances is demonstrated. *Huffman v. Huffman,* 477 N.W.2d 594, 596 (N.D.1991); *Burrell, supra,* 359 N.W.2d at 383. A trial court's determinations on whether there has been a material change of circumstances and whether the change warrants a modification of child sup-

---

**2.** However, we do not intend to encourage lawyers to routinely submit motions for reconsideration that merely parrot arguments already made and rejected by the trial court. *Compare* Rule 40(a), N.D.R.App.P. [describing proper content for a Supreme Court petition for rehearing]. If proper at all, a motion should be submitted only when justified by unique circumstances. *Compare* Rule 60(b)(i) through (vi), N.D.R.Civ.P. [describing grounds for relief from judgment]. In this case, Timothy submitted additional information in support of his motion.

port and spousal support are treated as findings of fact that will not be set aside on appeal unless they are clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Hallock v. Mickels,* 507 N.W.2d 541, 544 (N.D.1993); *Huffman, supra.* A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law. *Reimer v. Reimer,* 502 N.W.2d 231, 234 (N.D.1993); *Rueckert v. Rueckert,* 499 N.W.2d 863, 868 (N.D.1993).

■ In *Koch v. Williams,* 456 N.W.2d 299, 301 (N.D.1990), a majority of the North Dakota Supreme Court explained:

"While it is true that the 'change of circumstances' necessary to warrant modification is one based primarily on a change in financial circumstances, *Cook v. Cook,* 364 N.W.2d 74 (N.D.1985), it is also true that not every change in financial circumstances justifies a modification. *Bloom v. Fyllesvold,* [420 N.W.2d 327 (N.D.1988) ]. When the change is voluntary or self-induced, no modification is warranted because the obligor, by voluntarily placing herself or himself in a less financially secure position, is without clean hands and precluded from seeking equity. Even though the law never requires impossibilities, NDCC § 31–11–05(22), one who voluntarily dissipates or reduces income is not protected either from the consequences of such conduct or by equitable maxims. *Muehler* [*v. Muehler,* 333 N.W.2d 432 (N.D.1983) ]; *Foster* [*v. Nelson,* 206 N.W.2d 649 (N.D.1973) ]."

Absent a substantial showing of good faith or cause, a self-induced decline in income does not constitute such an exceptional change in circumstances as to afford the required basis for modifying a child support or spousal support award. *See, e.g., Muehler v. Muehler,* 333 N.W.2d 432, 434 (N.D.1983). Principles of equity control, and "[c]hanges in circumstances which make it equitable to reduce or increase spousal or child support are entitled to judicial recognition." *Muehler, supra,* 333 N.W.2d at 435.

■ A review of the trial court's decision denying the motion for modification in this case reveals that it rests in large part on Timothy's failure to obtain approval from the court before resigning from Dakota Clinic and opening his own practice. However, there is no legal requirement that a support obligor obtain prior court approval before changing employment. *Compare,* § 14–09–07, N.D.C.C. ["A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, . . ."]. Because a change in employment does not necessarily result in a change in financial circumstances, the proper time for a court to determine whether a change has occurred, whether the change is permanent or temporary, and whether it was made in good faith, is after the fact. *See Koch, supra,* and cases cited therein.

The trial court made no specific findings on whether Timothy's change of employment resulting in lower earnings was made in good faith, or on the general balance of the equities in this case. Debra essentially argues that the court impliedly found a lack of good faith, that the evidence supports this implied finding, and that the trial court's remarks about prior court approval were not a major basis for its decision. But the record does not allow us to reach this conclusion. The trial court's reference to prior court approval was not an isolated instance. During the hearing and in its oral ruling, the trial court stresses Timothy's failure to seek prior court approval no fewer than four times.[3] More-

---

3. In addition to the trial court's comments in its oral ruling quoted above, a colloquy between the trial court and Timothy further evidences the trial court's erroneous belief that prior court approval was required:

"MR. MAHONEY: I don't have—my resignation was August 1st, Judge. I told the judge—the judge was aware of it and the judgment was not made prior to my resignation.

The resignation was made before the judgment was made and if I would have known, I would have talked to the judge about it. I would have been happy to talk to him about it.

"THE COURT: As you probably know, your attorney advised you, you cannot just talk to the judge about it. You bring a formal motion. There's no ex parte communication. That is, you cannot just simply walk out on a judgment

over, at one point the trial court stated that there "might have been a way to do it in some proper manner if he had approached the Court in the first place...." This indicates that regardless of good faith, Timothy's failure to seek prior court approval may have been what tilted the balance in favor of the court's denial of the motion.

An appellate court is not bound by a trial court's findings of fact when those findings are based on an erroneous conception of the law. *See Manz v. Bohara,* 367 N.W.2d 743, 746 (N.D.1985); *Young v. Hamilton,* 332 N.W.2d 237, 243 (N.D.1983); *Diemert v. Johnson,* 299 N.W.2d 546, 548 (N.D.1980). We are unable to conclude that the trial court's erroneous view that Timothy was required to obtain prior court approval before changing employment did not color its judgment in denying the motion for modification.

Because the trial court's decision was based on an erroneous conception of the law, we conclude that its order denying the motion for modification is clearly erroneous and we remand for a new hearing on Timothy's motion in accordance with correct legal standards. *See Koch, supra,* and cases cited therein; *Muehler, supra.* Furthermore, under the circumstances of this case, we deem it appropriate and to be in the interests of justice to grant Timothy's request that the motion to modify be heard before a different judge to be designated by the presiding judge of the district. *See Sargent County Bank v. Wentworth,* 500 N.W.2d 862, 880 (N.D.1993).

### III

Debra seeks double costs and attorney fees for a frivolous appeal under Rule 38, N.D.R.App.P. Because the appeal is not frivolous, we deny the request.

Debra also seeks attorney fees for the appeal under § 14–05–23, N.D.C.C., because "Timothy has a greater ability to pay [the] fees." Appellate courts have concurrent jurisdiction with trial courts to award attorney fees on appeal. *Heller v. Heller,* 367 N.W.2d 179, 185 (N.D.1985). The propriety of an award of attorney fees depends, in part, on the needs of the party seeking the award and the assets of the party from whom the fees are sought. *Routledge v. Routledge,* 377 N.W.2d 542, 549 n. 7 (N.D.1985). Because an appellate court is not an evidence-gathering tribunal, we, like the North Dakota Supreme Court, prefer to leave that decision to the trial court. *Koch, supra,* 456 N.W.2d at 302. On remand, the trial court should determine what fees Debra is entitled to as a result of this appeal.

In view of our disposition of this case, it is unnecessary to address the other arguments raised by the parties.

We reverse the order denying the motion for modification and remand for a full evidentiary hearing which should include receipt of further evidence not excluding the type of evidence submitted in conjunction with the motion for reconsideration which we have not found necessary to consider to decide this appeal.

LEE A. CHRISTOFFERSON, District Judge, and GORDON O. HOBERG, Surrogate Judge, concur.

---

like that, and if you could do that type of thing, we would have nothing for anybody. So that's

not the way it works. I don't want to talk to you, but talk to your attorney...."