**Brian J. QUAMME, Plaintiff and Appellee,**

v.

**Joann L. BELLINO, f/k/a Joann L. Quamme, Defendant and Appellant.**

**Civ. No. 950154.**

Supreme Court of North Dakota.

Nov. 30, 1995.

Wayne T. Anderson, Fargo, for plaintiff and appellee.

Mark A. Meyer of Meyer Law Firm, Wahpeton, for defendant and appellant.

SANDSTROM, Justice.

Joann Bellino appeals the modified judgment adjudicating reserved issues in her divorce from Brian Quamme. We affirm in part, reverse in part, and remand, holding the adjusted income of Quamme's corporation, and not the salary paid to Quamme, should be used to calculate his child support obligation.

## I

Joann Bellino (Bellino) and Brian Quamme (Quamme) were married on August 28, 1976. In September 1978, the parties moved to Wahpeton and opened their own dental office. Quamme was the dentist, and Bellino worked as the bookkeeper and dental assistant. In September 1982, the parties' first son, Adam, was born. Bellino quit working at the dental office to become a full-time parent, but she continued doing the bookkeeping for the dental practice at home. A second child, Breanna, was born in September 1984. Bellino remained at home to care for the children until the divorce.

The parties separated on September 25, 1990. At that time, the parties owned two houses in the Wahpeton area. Bellino lived in one house, and Quamme lived in the other.

The divorce was tried August 29, 1991. The court awarded the parties joint legal custody of the two children. Bellino was awarded sole physical custody during the school year. Quamme was awarded sole physical custody during the summer. The court ordered Quamme to assume the mortgage payments for both houses. Recognizing the significant expenses incurred by Quamme in maintaining both houses, the court temporarily awarded Bellino $1,200 per month child support, an amount less than the presumptively correct amount under the guidelines. Bellino was also to receive the rental payments from the larger house. Once the larger house was sold, the court intended to make a more permanent order concerning child support. Intending to revisit the issue of spousal support following the sale of the larger house, the court provided temporary spousal support to Bellino by requiring Quamme to pay for her medical insurance and "uncovered" optometric, dental, and other medical expenses. The court also ordered Quamme to pay Bellino's attorney's fees at the rate of $100 per month. The court added, "This payment is a temporary payment order and is subject to readjustment upon sale of the [larger] house."

Quamme moved to amend the judgment on November 15, 1991. Both parties claimed the other had wrongfully acquired property belonging to the other under the divorce decree. The court ordered Quamme to pay Bellino $1,000 in attorney's fees, in part for Quamme's self-help acquisition of certain property.

Bellino unsuccessfully moved the district court to amend its original judgment on July 16, 1993. Bellino again moved the court to amend the judgment in October, 1994. Specifically, she contended the judgment's provisions regarding spousal support, child support, and attorney's fees needed to be amended. In the memorandum opinion authorizing amendment of judgment, the court

noted several factors contributed to the necessity for amendment. First, Quamme was able to reduce his net income through incorporation, paying himself $46,000, instead of being taxed as a sole proprietor on $71,000. The court also noted Quamme gained additional write-offs through incorporation, "including paying salary to his new wife which would result in income to the family but not necessarily be chargeable to him for child support purposes." Second, Quamme purchased the larger house from Bellino and sold the smaller house, reducing his payment obligations. The substantial mortgage payments from two houses had made it impossible, the court said, to award the child support suggested by the guidelines in the initial divorce decree as there just "wasn't enough money to go around." And third, Bellino has lost the rental value of the larger house, since Quamme purchased it.

In its memorandum opinion, the district court stated, "The Court very clearly indicated, and as counsel also recognized, the sale of one of these houses was an absolute necessity in order to properly calculate meaningful child support and spousal support. That is the reason the Court reserved those issues in its initial opinion." Overall, the court found Bellino had lost approximately $500 per month in income, while Quamme had reduced his obligations by about $1,000 per month.

The district court increased monthly child support from $1,200 to $1,372. Bellino was awarded $500 per month in spousal support for four years, and Quamme was released from the obligation to pay her medical insurance and expenses. Finally, the court awarded Bellino additional attorney's fees of $1,500 for the cost of bringing this motion.

Bellino appeals the court's judgment, claiming the spousal support, child support, and attorney's fees awards are all clearly erroneous.

The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6 and N.D.C.C. § 28–27–01.

## II

Bellino claims the court's child support award in the district court judgment is clearly erroneous because it was not calculated using appropriate figures concerning Quamme's income, especially considering the recent incorporation of the dental business.

### A

The district court specifically reserved the issue of child support for later decree. *See Hallock v. Mickels*, 507 N.W.2d 541, 544 (N.D.1993). In addition, the original child support award was entered more than one year before the filing of this motion. *See* N.D.C.C. § 14–09–08.4(3). On appeal, neither party contends the district court inappropriately revisited this issue.

### B

■ The district court increased Quamme's child support obligations to $1,372 per month. Bellino argues the district court incorrectly calculated Quamme's income for child support purposes. A district court's findings on a motion to modify child support are subject to review under N.D.R.Civ.P. 52(a), and will not be disturbed on appeal unless they are clearly erroneous. *Mahoney v. Mahoney*, 516 N.W.2d 656, 661 (N.D.App. 1994) (citing *Hallock v. Mickels*, 507 N.W.2d 541, 544 (N.D.1993)). "A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law." *Mahoney.*

In determining Quamme's income for child support purposes, the court considered the average monthly income of $5,241 per month for the three years preceding incorporation, and the average net income of $4,224 per month for the two years following incorporation. The court found the average net monthly income over the entire period to be approximately $4,800.

The district court specifically found Quamme had been able to reduce his net monthly income through incorporation. Yet, there is no indication the district court calculated Quamme's income after incorporation

based on the business' actual gross income, rather than the salary Quamme chose to pay himself. When the obligor is self-employed, the district court should "coherently assemble facts and figures from the evidence to determine [the obligor's] net income." *Mahoney v. Mahoney*, 538 N.W.2d 189, 194 (N.D.1995).

### C

In determining income for child support purposes, the district court must consider the entire revenue of the business in self-employment situations. N.D.Admin.Code § 75–02–04.1–05(2) states, "After adjusted gross income from self-employment is determined, all business expenses which may be allowed for taxation purposes, but which do not require actual expenditures, such as depreciation and net operating losses, must be added to determine net income from self-employment." "Net income from self-employment" is "gross income of any organization or entity which employs the obligor, but which the obligor is to a significant extent able to control, less actual expenditures attributable to the cost of producing income to that organization or entity." N.D.Admin.Code § 75–02–04.1–01(8). In instances of self-employment, the administrative code requires consideration of the gross income of the business, rather than what an individual chooses his personal "income" to be.

When an obligor is the sole stockholder of several corporations and determines her own salary, "this is an appropriate case for 'piercing the corporate veil' and considering the income of those corporations in determining [the obligor's] earning capacity." *Com. ex rel. Maier v. Maier*, 274 Pa.Super. 580, 418 A.2d 558, 561 (1980). "The net income of [an obligor] as shown on income tax returns is not to be accepted in a support case as the infallible test of [the obligor's] earning capacity. Particularly is this true where the [obligor] is in business for himself and is allowed substantial business 'expenses,' items of depreciation and sundry other deductions ..." *Commonwealth v. Miller*, 202 Pa.Super. 573, 198 A.2d 373 (1964). In determining the obligor's earning capacity, the court should consider "his salary from his wholly owned corporation, the corporation's earnings, life insurance paid by the corporation, and perquisites provided by the corporation ..." *Com. ex rel. Maier v. Maier*, 274 Pa.Super. 580, 418 A.2d 558, 560 (1980) (citing *Commonwealth v. Gutzeit*, 200 Pa.Super. 401, 189 A.2d 324, 327 (1963)).

■ Encompassing the business' entire revenues in a child support obligation calculation for an obligor who significantly controls the business entity from which he derives income is necessary under the child support guidelines. The district court's failure to do so is clear error.

### D

■ The district court also appears to have excluded from income the salary Quamme's corporation pays his new wife. N.D.Admin.Code § 75–02–04.1–08 provides:

"The income and financial circumstances of the spouse of an obligor should not be considered as income for child support purposes unless the spouse's income and financial circumstances are, to a significant extent, subject to control by the obligor as, for instance, where the obligor is a principal in a business employing the spouse."

The exclusion of the new wife's salary appears clearly erroneous in this case. *See Smith v. Smith*, 538 N.W.2d 222, 230 (N.D. 1995).

### III

Bellino contends the court's rehabilitative spousal support award in the district court judgment is clearly erroneous because it was not calculated using appropriate figures concerning Quamme's income, especially considering the recent incorporation of the dental business. Bellino contends the district court erred in failing to specifically retain jurisdiction to award permanent spousal support in the future.

### A

The district court specifically reserved the issue of spousal support for later modification. *See Rudh v. Rudh*, 517 N.W.2d 632, 634 (N.D.1994). On appeal, neither party

contends the district court inappropriately revisited this issue.

### B

■ The district court increased Quamme's spousal support obligations to $500 per month for four years, and discontinued Quamme's previous support obligation requiring him to pay Bellino's medical insurance and other "uncovered" medical expenses. Bellino argues the district court incorrectly calculated Quamme's income for spousal support purposes. A district court's findings on a motion to modify spousal support are subject to review under N.D.R.Civ.P. 52(a), and will not be disturbed on appeal unless they are clearly erroneous. *Mahoney v. Mahoney,* 516 N.W.2d 656, 661 (N.D.App.1994) (citing *Hallock v. Mickels,* 507 N.W.2d 541, 544 (N.D.1993)). "A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law." *Mahoney.*

■ As discussed in part II, the district court's calculation of Quamme's income is clearly erroneous. Since Quamme's income is appropriately considered in setting spousal support, the district court must revisit the amount of support on remand. *See Smith v. Smith,* 326 N.W.2d 697, 700 (N.D.1982).

### C

■■ In her affidavit in support of this motion, Bellino asked the district court to reserve the issue of permanent spousal support. "If trial courts find no immediate need for awarding permanent spousal support, they should retain jurisdiction to do so beyond a temporary award, when facing uncertainty about the need for permanent support. This will further the interests of a spouse potentially in need of support on a permanent basis by leaving the award open for later modification." *van Oosting v. van Oosting,* 521 N.W.2d 93, 101 (N.D.1994). Bellino did little to develop her case for reserving jurisdiction to award permanent spousal support, and the district court did not specifically address the issue in its order. At least as long as spousal support continues, the district court retains jurisdiction to award permanent spousal support. N.D.C.C. § 14–05–24. *See Becker v. Becker,* 262 N.W.2d 478, 483 (N.D.1978). If circumstances merit, before the rehabilitative spousal support ends, Bellino may apply for further spousal support, or for reservation of jurisdiction over the issue.

### D

■ In her brief, Bellino claims the North Dakota Supreme Court "has hinted that special considerations must be given to awarding spousal support where the spouse that has been disadvantaged by the marriage is a woman." We reject this call for gender biased treatment.

Bellino offered no evidence she would be disadvantaged by her gender in her chosen profession, or in her particular geographic region. Legal principles based on stereotyped assumptions are unworthy of our judicial system, and participants in our justice system are entitled to be free from such categorizing. Stereotyping leads to bias and prejudice; it doesn't correct it.

### IV

The district court awarded Bellino $1,500 in attorney's fees for the cost of bringing this motion. Bellino claims she is entitled to $6,667 in fees incurred in litigation following the original divorce decree, but before bringing this motion. She also claims she is entitled to an additional $1,000 in attorney's fees incurred in bringing this motion.

### A

During the hearing on this motion to amend, Bellino testified she had incurred an additional $6,667 in attorney's fees in post-judgment litigation. Bellino claims the district court award in this motion to amend is clearly erroneous because it does not cover those attorney's fees. The district court saw "no reason to adjust the previously ordered attorney fees or payment schedule in connection therewith."

Bellino has not appealed from any post-judgment motion denying her attorney's fees. She asked the district court, and this Court on appeal, to retroactively amend findings of fact concerning attorney's fees, to make them include debt incurred **after** the findings were made and the judgment entered. Bellino cites no authority for her argument. We have stated, "Where a party fails to provide supporting argument for an issue listed in his brief, he is deemed to have waived that issue." *State v. Obrigewitch*, 356 N.W.2d 105, 109 (N.D.1984). Bellino offered no supporting argument for the proposition that a property division in a divorce decree should be amended to include debt incurred *after* the date of the decree. Therefore, Bellino has waived the issue.

### B

Bellino testified she owes $2,500 in attorney's fees attributable to bringing this motion. The district court awarded her a total of $1,500 in attorney's fees for bringing the motion because of the "inequality of the incomes between the two parties ..." Bellino asserts the district court should have awarded her the entire amount, rather than only $1,500.

The trial court has authority in a divorce case to award attorney fees for proceedings in the trial court and upon appeal. N.D.C.C. § 14-05-23. The principal standards guiding an award of attorney fees in a divorce action are one spouse's need and the other's ability to pay. *Foreng v. Foreng*, 509 N.W.2d 38, 41 (N.D.1993). "The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case." *Bakes v. Bakes*, 532 N.W.2d 666, 669 (N.D.1995) (citing *Lucy v. Lucy*, 456 N.W.2d 539, 544 (N.D.1990)). We will not overturn an award of attorney fees unless the appellant affirmatively establishes the trial court abused its discretion. *Heller v. Heller*, 367 N.W.2d 179, 184 (N.D.1985).

Although the trial court should have indicated it considered all of the above factors in awarding the $1,500, this is not a case where the trial court awarded no fees and left no rationale for that decision. *See Lill v. Lill*, 520 N.W.2d 855, 858 (N.D.1994). In light of the financial circumstances of the parties and the trial court's award of part of the claimed debt, we cannot say Bellino established affirmatively the trial court abused its discretion in awarding her $1,500 in attorney's fees for the cost of bringing this motion.

### V

The district court's calculation of Quamme's income, using Quamme's self-determined salary, and excluding the salary paid by Quamme's corporation to his new wife, is clearly erroneous. The child support and spousal support awards, based on that erroneous calculation, are also clearly erroneous and must be remanded for calculations consistent with N.D.Admin.Code § 75-02-04.1-05 and this opinion.

The district court's judgment with respect to attorney's fees is affirmed.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

It is not a "stereotyped assumption" that women are more likely to be economically disadvantaged by divorce than men: It is a plain fact, which has been established in study after study. *See Beals v. Beals*, 517 N.W.2d 413 (N.D.1994) (Levine, J., specially concurring) [citing gender bias studies from Colorado, Florida, Rhode Island and Idaho to support the proposition that "the economic consequences of divorce for women are devastating."]. Women remain more likely to assume the role of homemaker, and it has long been known that the "willingness of the wife to remain at home limits her ability to develop a career of her own. If the marriage is later dissolved, the wife may be unable, despite her greatest efforts, to enter the job market." *Marriage of Morrison*, 20 Cal.3d 437, 143 Cal.Rptr. 139, 149, 573 P.2d 41, 51 (1978); *see also Marriage of Brantner*, 67 Cal.App.3d 416, 136 Cal.Rptr. 635 (1977). Consequently, "divorced men experience an average 42 percent rise in their standard of

living in the first year after the divorce, while divorced women (and their children) experience a 73 percent decline." Lenore J. Weitzman, *The Divorce Revolution* 323 (1985). While it may be biased to award support to a disadvantaged wife based solely on the fact that she is a woman (a practice Bellino apparently would like us to endorse), it is not biased to recognize that women are more likely to fall into the category of "disadvantaged spouse" and that homemakers are more likely to encounter an inhospitable job market. The reality of gender-based bias, discrimination and detriment is not pretty, and we cannot make it go away merely by calling it a "stereotyped assumption" and closing our eyes to it under the guise of "blind justice."