Shelly REIMER, Plaintiff and Appellee,

v.

Warren REIMER, Defendant
and Appellant.

Civ. No. 920284.

Supreme Court of North Dakota.

June 16, 1993.

Argue and Fontaine, Cavalier, for plaintiff and appellee; argued by Laurie A. Fontaine.

Sonja Clapp (appeared), Asst. State's Atty. and Loretta Walberg (argued), Third Year Law Student, Grand Forks Regional Child Support Unit, Grand Forks, for defendant and appellant.

MESCHKE, Justice.

Warren Reimer appeals an order denying his motion to require his former spouse to pay child support, despite an agreed divorce decree that relieved her of child support by waiving her share of certain marital property. We reverse and remand with instructions.

Warren and Shelly Reimer married in 1978, and had three children: Shaun Anthony, born in 1979; Bryce Lee, born in 1981; and Tyler Wade, born in 1986. Warren and Shelly divorced in 1988. Upon their stipulation, the trial court awarded them joint legal custody of the children, placing physical custody with Warren.

For the divorce decree, the parties agreed:

7. That [Shelly] will not be required to pay child support due to her low economic status and the fact that she intends to attend school. Further, [Shelly] waives any right, title or interest she may have in the real property of the parties described in Paragraph 3 above as and for any child support obligations she may be indebted for now or in the future.

In May 1990, Warren moved the trial court to modify the divorce decree to require Shelly to pay reasonable child support. Because it found no material change in circumstances, the trial court denied the motion.

Since then, Shelly has graduated from East Grand Forks Technical College, and since August 1991, she has been employed by Dakota Hospital in Fargo as an operating-room technician, earning over $800 per month.

In May 1992, Warren again moved the trial court to modify the divorce decree to require Shelly to pay child support under current child-support guidelines. He argued that he "has a need for and [Shelly] has the ability to pay child support in this matter. [Shelly's] income is such that an establishment of a child support obligation is permissible under the statute and necessary for the proper support of the minor children." Shelly resisted the motion, arguing that Warren "should be precluded from enjoying the benefits of the agreement at the time of the divorce and later attempting to recover child support in addition."

After an evidentiary hearing, the trial court found that "[t]here has been a substantial change in circumstances, although the change may have been contemplated at the time of the original divorce," and that "the original Judgment and Decree of Divorce in pertinent part was equitable and should be enforceable on the basis it is still equitable in light of the present circumstances." The court denied modification. Warren appeals.

In North Dakota, "[p]arents shall give their children support and education suitable to the child's circumstances." NDCC 14-09-08. After a divorce, a trial court has continuing jurisdiction to modify even agreed child support upon a material change in circumstances. *Tiokasin v. Haas*, 370 N.W.2d 559, 561 (N.D.1985). But, as this court held long ago in *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817, 820 (1923), and has often reiterated, *Kuehl v. Lippert*, 401 N.W.2d 523, 524 (N.D.1987), a trial court does not have continuing jurisdiction to modify the decreed property distribution.

We recently resolved this clash of contradictory doctrines by elevating the court's continuing power to modify child support over the court's lack of power to change an agreed property distribution if necessary to implement child support. In *Rueckert v. Rueckert*, 499 N.W.2d 863 (N.D.1993), a divorcing couple agreed that, "[i]n lieu of child support," the noncustodial parent made no claim to all the marital property, which was distributed to the custodial parent. *Id.* at 867. The trial court denied the custodial parent's motion for child support, finding that "the waiver of child support in the original divorce decree was 'contrary to North Dakota law and should not have

been approved by this Court. However, it was the parties' agreement, and at this time the Court will honor this provision and deny [the custodial parent's] request for child support until such time as [he] can demonstrate a significant change of circumstances.'" *Id.* at 864.

■ Using the reasoning in *State of Minnesota v. Snell*, 493 N.W.2d 656, 659 (N.D.1992), we explained:

> Although we encourage settlements in divorce actions, "[w]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings."

*Rueckert* at 868. Despite an agreement between the divorcing parents, the best interests of children necessitate that a trial court exercise continuing jurisdiction to modify child support. *Rueckert* at 868. For this predominating policy reason, we held in *Rueckert* that "parental agreements that prohibit or limit the power of a court to modify future child support are invalid."

■ The *Rueckert* holding controls this case. Accordingly, we hold that Warren and Shelly's agreement and the divorce decree relinquishing her interest in certain marital property, in lieu of paying child support, contravene Shelly's legal duty to provide support for her children, and are invalid.

■ The trial court found that "[t]here has been a substantial change in circumstances, although the change may have been contemplated at the time of the original divorce." Nevertheless, that "contemplation" is void and does not prevent judicial action to compel payment of child support by a noncustodial parent. *See Rueckert.* Since Shelly now has earnings, when she had virtually none at and after the divorce, the finding of a change in circum-

stances is supported by the evidence and is affirmed. This change in circumstances is significant enough to impose a child support obligation on Shelly, the noncustodial parent.

■ Still, Shelly argues that, because Warren is employed full-time, earns $1,400 net income monthly, and is not on public assistance, he has made "no showing of detriment to the minor children" that should compel her to pay child support. Detriment to the child is not a precondition for payment of child support. *See* NDAC 75–02–04.1–09(1)(b) ("The child support amount and the calculations provided for under this chapter ... consider ... [t]he income of the obligee, which is reflected in a substantial monetary and nonmonetary contribution to the child's basic care and needs by virtue of being a custodial parent."). *See also* NDAC 75–02–04.1–02(1) ("Calculations of child support obligations provided for under this chapter consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child's care.").

■ Under the guidelines, "[i]t is presumed that a noncustodial parent owes the specified amount of support to the child." *State of Minnesota v. Snell*, 493 N.W.2d at 661. Only if rebutted by factors not considered in the guidelines can the presumed amount be decreased for undue hardship to the obligor, or increased for undue hardship to a child for whom support is sought. *See* NDAC 75–02–04.1–10; NDCC 14–09–09.7(3); *Clutter v. McIntosh*, 484 N.W.2d 846, 848 (N.D.1992); *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 876 (N.D.1992). Without the specific findings of hardship to the obligor required by NDCC 14–09–09.7 (when a balancing with the custodial parent's income may be important to avoid hardship to the child), a custodial parent's income is irrelevant to the noncustodial parent's obligation to pay child support.

■ Following the equitable-offset remedy that we formulated in *Rueckert* to adjust for a waiver of property rights that affected child support, the trial court must

proceed on remand to determine Shelly's child support obligation. The trial court is instructed to evaluate Shelly's interest in the marital property that she relinquished in lieu of child support, calculate the amount of child support that would have been correct from the original decree to the date of Warren's latest motion to modify, compute Shelly's child support obligation since the date of that motion under the guidelines, and offset the value of her share of the marital property waived, so far as it goes. *Rueckert* at 870–71. For this purpose, the trial court is not modifying accrued, but unpaid, child support. Instead, the trial court must determine what child support was effectively prepaid by the property agreement, and order Shelly's payment of child support to commence after the offsetting credit is used up, or upon Warren's most recent motion, whichever is later.

The trial court's order finding that the Reimers' agreement "was equitable and should be enforceable" was induced by an incorrect view of the law, and thus is clearly erroneous. NDRCivP 52(a); *Rueckert.* We reverse the trial court's order refusing to require Shelly to pay child support, and remand for proceedings consistent with this opinion.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.