Renee O'CALLAGHAN, Plaintiff
and Appellee,

v.

Lawrence O'CALLAGHAN, Defendant
and Appellant.

Civ. No. 930357CA.

Court of Appeals of North Dakota.

May 11, 1994.

Dwight C.H. Kautzmann (argued), Bair, Kautzmann & Bair, Mandan, for plaintiff and appellee.

Thomas M. Tuntland (argued), Mandan, for defendant and appellant.

LEE A. CHRISTOFFERSON, District Judge.

Lawrence O'Callaghan appeals from an amended judgment denying his motion for a reduction of his child support obligation. We affirm.

Lawrence and Renee O'Callaghan were divorced in 1988. Pursuant to a stipulation between the parties, the divorce decree awarded Renee custody of their three minor children, Ryan, who was 14, Starlyn, who was 10, and Keenan, who was 5, and ordered Lawrence to pay the following child support:

"a.  Three children       $835 per month
"b.  Two children         $700 per month
"c.  One child            $550 per month

"Said payments shall terminate per child when the respective child reaches the age of 18 years or graduates from high school in the year of his or her 18th birthday, whichever occurs last."

In 1991 the parties agreed to change custody of Ryan, and Lawrence moved to reduce his child support obligation, arguing that, under the child support guidelines, his net obligation for the split custody arrangement was $373 per month. Renee resisted "because the Judgment dictates what occurs when she no longer has the three children in her custody." The district court, the Honorable Gerald G. Glaser, agreed with Renee, concluding:

"Since the [stipulated] agreement is explicit with respect to the amount to be paid to Mrs. O'Callaghan, that is the amount that is to be applied here, particularly when the person seeking enforcement would be entitled to an even greater amount under the guidelines. The agreement states it is the entire agreement between the parties with respect to matters of support; it is not permissible to read into the agreement a provision that obligates Mrs. O'Callaghan to pay support to Mr. O'Callaghan when he takes custody of a child. A change in custody is certainly something that is always a possibility when these agreements are entered into, but the parties saw fit not to make an explicit adjustment in this eventuality. As a matter of fact, there is an adjustment, because the agreement explicitly makes one, and Mr. O'Callaghan is, in effect, being provided with an extra $135 a month with which to support the child that will now be in his custody. Attempting to apply the guidelines in this situation would do violence to the explicit agreement.

"It is no answer to say that it would work as Mr. O'Callaghan requests if the parties were being divorced at the present time. The child support figures were part of an overall agreement reached by the parties and could very well involve give and take in other areas. If I was to ignore the explicit provisions of that agreement, it would become necessary to reexamine all areas of the agreement to determine whether any other adjustment should be made.

"My conclusion is that the provisions of the child support guidelines, which contemplate that under normal circumstances Mrs. O'Callaghan would pay support to Mr. O'Callaghan, should not be applied in this situation. They are presumptive at best. Departure can occur when the circumstances justify it, and I think those circumstances are present here. Mr. O'Callaghan's obligation is to provide $700 a month child support."

An amended judgment was entered on November 14, 1991. Lawrence did not appeal.

On April 3, 1992, Lawrence again moved to reduce his child support obligation, alleging that the change in Ryan's custody constituted a material change in circumstances which required a modification in accordance with the child support guidelines. The district court, the Honorable William F. Hodny, denied Lawrence's request, concluding it was "res judicata as a result of" Judge Glaser's 1991 decision. Lawrence did not appeal.

On October 1, 1993, Lawrence moved to reduce his monthly child support obligation to the amount required by the child support

guidelines.[1] Judge Hodny denied Lawrence's request, concluding Judge Glaser's 1991 decision "continues to be res judicata to the present motion and the application of the presumption of the guidelines has been rebutted because child support is based on contract." Lawrence appealed.

We initially consider the trial court's reliance on res judicata. Absent an appeal, a trial court's decision is ordinarily res judicata and final between the parties. *Fichter v. Kadrmas,* 507 N.W.2d 72 (N.D.1993). However, it is well established that, under N.D.C.C. § 14–05–24, a trial court has continuing jurisdiction to modify child support. *E.g., Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993). The continuing jurisdiction authorized by N.D.C.C. § 14–05–24, does not limit a party to one attempt to seek modification of child support. *Schaff v. Schaff,* 449 N.W.2d 570 (N.D.1989). However, it is generally established that a prior child support order is res judicata if there has not been a material change in circumstances since the order was entered. 24 Am.Jur.2d, *Divorce and Separation* § 1082 et seq. (1983). Under that rationale, our Supreme Court has required a party requesting a modification of child support to show a material change in financial circumstances. *Woolridge v. Schmid,* 495 N.W.2d 52 (N.D.1993); *Garbe v. Garbe,* 467 N.W.2d 740 (N.D.1991). It is also a well-established principle that res judicata is not a defense if, between the entry of a judgment and a later proceeding, there has been an intervening change in the law. *State v. J.P. Lamb Co.,* 401 N.W.2d 713 (N.D.1987).

Lawrence contends that amendments to N.D.C.C. § 14–09–08.4(3), effective October 1, 1993, entitled him to a modification of his child support obligation to the guideline amount without requiring him to show a material change in circumstances.

Section 14–09–08.4(3), N.D.C.C., provides:
*"Periodic review of child support orders.*

\* \* \* \* \* \*

"3. If a child support order sought to be amended was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines, whether or not the motion or petition for amendment arises out of a periodic review of a child support order, and whether or not a material change of circumstances has taken place, unless the presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted. If a motion or petition for amendment is filed within one year of the entry of the order sought to be amended, the party seeking amendment must also show a material change of circumstances."

Under the plain language of that statute, a material change of circumstances is required for motions to modify child support filed within one year of entry of the order which the movant seeks to modify; however, a material change of circumstances is not required for motions filed more than one year after the order sought to be amended. *See Woolridge,* 495 N.W.2d at 53–54, n. 3. *See also Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993) [under "temporary" provision of N.D.C.C. § 14–09–08.4(3), which was same as "permanent" provision effective on October 1, 1993, material change of circumstances necessary for a motion to modify child support filed within one year of entry of previous order denying modification of child support]. Here, Lawrence's motion was filed more than one year after entry of the order he sought to amend. Under the trial court's continuing jurisdiction and the change in law effected in N.D.C.C. § 14–09–08.4(3), Lawrence was entitled to review of his child support obligation without showing a material change of circumstances, and the trial court's reliance on res judicata was misplaced.

However, the trial court also determined that "application of the presumption of the guidelines has been rebutted because child support is based on contract." Relying on *Reimer v. Reimer,* 502 N.W.2d 231 (N.D. 1993), and *Rueckert v. Rueckert,* 499 N.W.2d

---

1. At that time Ryan was more than 18 years old.

863 (N.D.1993), Lawrence asserts that parental stipulations that prohibit or limit the power of a court to modify future child support are invalid. He argues that the trial court's reliance on the invalid stipulation was misplaced and, under N.D.C.C. § 14–09–09.7(3), did not justify a departure from the presumptively correct amount of support required under the child support guidelines.

Section 14–09–09.7(3), N.D.C.C., provides:

"*Child support guidelines.*

\*　　\*　　\*　　\*　　\*　　\*

"3. There is a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support. The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes, applying criteria established by the public authority which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the correct amount of child support. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted. The finding must:

"a. State the child support amount determined through application of the guidelines;

"b. Identify the criteria that rebut the presumption of correctness of that amount; and

"c. State the child support amount determined after application of the criteria that rebut the presumption."

That statute creates a rebuttable presumption that the amount of support required by the child support guidelines is correct. The presumption may be rebutted if, applying criteria established by the public authority[2] which take into consideration the best interests of the child, a preponderance of evidence establishes that the guideline amount is not the correct amount of child support.[3]

In *Rueckert* the parties stipulated that "[i]n lieu of [paying] child support" the non-custodial parent relinquished her marital rights in certain property awarded to the custodial parent. 499 N.W.2d at 864. Our Supreme Court recognized that stipulations for child support are governed by contract law and that courts should be more reluctant to modify a divorce decree based upon a stipulation than a decree based upon a finding as to ability to pay. The Court thus acknowledged the conflicting considerations between a trial court's continuing jurisdiction to modify child support and the effect of a stipulation relinquishing rights to certain marital property in lieu of paying child support. In resolving that conflict, our Supreme Court relied on a well-established public policy requiring adequate support and maintenance for minor children and held that parental agreements that prohibited or limited the power of a court to modify future child support were invalid. *See State of Minnesota v. Snell,* 493 N.W.2d 656 (N.D.1992); *Tiokasin v. Haas,* 370 N.W.2d 559 (N.D. 1985).

In *Reimer,* the parties stipulated that the non-custodial parent waived "any right, title or interest she may have in [certain marital] real property of the parties ... as and for any child support obligations she may be indebted for now or in the future." 502 N.W.2d at 232. Our Supreme Court followed

---

2. "Public authority" means the Department of Human Services. N.D.C.C. § 14–09–09.10(10).

3. Under prior law, the presumption was rebutted "if a preponderance of the evidence in a contested matter establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought." 1989 N.D.Sess.Laws ch. 148, § 4. The prior law was amended to

"conform to the requirements of federal regulations issued on May 15, 1991, at 56 Federal Register 22354. These regulations, at 45 C.F.R. § 302.56(G), require the state to set criteria for rebuttal of the presumption that a child support amount set under the guidelines is correct. The criteria must consider the best interests of the child. The federal regulations also require that the child support order state the amount required under the guidelines and then justify why the order varies from the guidelines."

March 2, 1993 Minutes of Senate Human Services Committee regarding H.B. 1181, Testimony of Blaine Nordwall at p. 10.

the public policy rationale relied on in *Rueckert* and held that the parties' child support agreement was invalid because it contravened the non-custodial parent's legal duty to provide child support for her children.

Here, Lawrence argues that his present income required a child support obligation of "$356.00 [per month] for two children and $282.00 [per month] for one child." Renee does not deny that, since the stipulated divorce decree, Lawrence's income has decreased because of a change in jobs. *Cf. Muehler v. Muehler*, 333 N.W.2d 432 (N.D. 1983) [under requirement of change in circumstances for modification of divorce decree, inquiry must be made to determine what brought about change]. Renee also does not dispute that, for Lawrence's income, the amounts suggested by him correctly reflect his scheduled support under the guidelines. Instead, she contends that *Rueckert* and *Reimer* do not compel reducing Lawrence's child support obligation from the stipulated amount to the guideline amount.

One of the primary goals of the statutory and regulatory scheme for establishing and enforcing scheduled child support obligations is to further the best interests of children. *Shipley v. Shipley*, 509 N.W.2d 49 (N.D. 1993). As part of the scheme to achieve that goal, the scheduled amounts under the child support guidelines promulgated by the Department of Human Services have been elevated from a "scale of suggested minimum contributions" to a presumptively correct amount which trial courts must follow unless that presumption of correctness is rebutted by criteria which take into consideration the best interests of the child. *See* 1989 N.D.Sess.Laws ch. 148, § 4; 1983 N.D.Sess. Laws ch. 181, § 1. *See also Burrell v. Burrell*, 359 N.W.2d 381 (N.D.1985). Although the scheduled amounts of child support have been elevated from suggested amounts to presumptively correct amounts, the scheduled amounts have not changed from minimum contributions which help provide some assurances that minor children will receive adequate support and maintenance.

In both *Rueckert* and *Reimer*, the parties' stipulations resulted in child support obligors waiving their rights to certain marital property in lieu of paying *any future child support*. The non-custodial parents in both cases were making no child support payments. *See* N.D.A.C. § 75–02–04.1–04 ["A support obligation should be established in each case where the obligor has any income. Even though the obligor's payment is far from sufficient to meet the child's needs, considerations of policy require that all parents understand the parental duty to support children to the extent of the parent's ability."]. The overriding public policy rationale relied upon in both cases was a recognition that the best interests of the children required the obligor to provide adequate support and maintenance for minor children. That policy was conspicuously violated in both cases by agreements to pay *no* future child support. Although trial courts have continuing jurisdiction to modify stipulations in which the parties agree to pay child support in an amount greater than that required by the guidelines, a stipulation by the parties to pay an amount of child support greater than that required under the child support guidelines does not violate the public policy relied on by our Supreme Court in *Rueckert* and *Reimer*.

N.D.A.C. § 75–02–04.1–12 does not require a different result. It applies to proceedings where the parties agree or stipulate to a child support amount and requires credible evidence to demonstrate that the "agreed amount of child support conforms to" the child support guidelines. However, that provision does not preclude the parties from agreeing to child support in an amount greater than the minimum contributions required by the guidelines.

Although Lawrence claims hardship because of his current income, his argument ignores the parties' stipulation which allowed him to receive a greater share of marital property in exchange for a child support obligation in an amount greater than that required by the guidelines.[4] The parties' agreement furthers the best interests of

---

4. The logical extension of Lawrence's argument would require a remand to reconstruct the rec-

ord and relitigate issues about the value of marital property relinquished by Renee in the original

the children and does not violate the public policy of providing adequate support and maintenance for minor children. Rather, the parties' agreement for increased child support actually furthers that public policy. We conclude that the trial court's determination that the parties' stipulation rebutted the presumptively correct amount of child support satisfies the "best interests of the child" requirement of N.D.C.C. § 14–09–09.7(3).

Accordingly, we affirm the district court judgment.

RALPH J. ERICKSTAD, Chief Surrogate Judge, and GORDON O. HOBERG, Surrogate Judge, concur.

decree in 1988, as well as a calculation of the appropriate level of child support since the decree with an appropriate offset. *See Rueckert; Reimer.* The obvious complexities and difficulties involved with that type of reconstruction of the record supports the conclusion that public policy does not prohibit the enforcement of a stipulation which requires child support payments in an amount greater than that required by the child support guidelines.