**Sheldon A. SMITH, Plaintiff, Appellant and Cross–Appellee,**

v.

**Carla J. SMITH, Defendant, Appellee and Cross–Appellant.**

Civ. No. 940390.

Supreme Court of North Dakota.

Sept. 27, 1995.

---

Scott K. Porsborg (argued), of Smith Bakke Hovland & Oppegard, Bismarck, for plaintiff, appellant and cross-appellee. Appearance by Sheldon A. Smith.

Irvin B. Nodland (argued), Bismarck, for defendant, appellee and cross-appellant.

NEUMANN, Justice.

Sheldon A. Smith appeals and Carla J. Smith cross-appeals from an amended judgment modifying Sheldon's child support obligation. We affirm in part, reverse in part, and remand for further proceedings.

Sheldon and Carla are both attorneys. They were divorced in January 1992 under a stipulation which, in part, distributed their marital estate and debts and granted Carla "custodial care" of the parties' two minor children. The stipulation said:

> "The parties agree that child support will be paid by the husband to the wife in the amount of $1,250.00 total per month.
>
> "The parties agree that the child support is the husband's contribution to one-half of the ordinary and reasonable living expenses of the children. The parties agree that the husband shall not be obligated, in any form whatsoever, to help provide support to the wife. The parties further agree that each party, in addition to providing support for the children, will provide all of their own independent help for the children for items such as vacations, extracurricular activities which are not necessary for the child's actual health and well being. The parties agree to reevaluate the $1,250.00 on or about January 1, 1993 to determine if the $1,250 adequately reflects one-half of the children's reasonable and necessary expenses.
>
> "The proportionate child support shall cease upon each child's completion of high school or attaining the age of nineteen whichever is earlier. The husband agrees to pay a reasonable share of the children's expense incurred by the wife while they are attending college. The husband shall get one exemption for income tax purposes and the wife agrees to execute such documents as are necessary for IRS purposes. The husband also agrees to pay up to one-half of reasonable tuition, room and board for the children for up to four years of college as long as the child is a fulltime student and has passing grades."

In December 1993, Carla filed a motion to vacate the divorce judgment,[1] seeking to move the children from Bismarck to Minneapolis, Minnesota, and to increase Sheldon's child support obligation to the amount required by the child support guidelines. Sheldon countered with a motion for change of custody. The trial court denied Carla's request to move the children to Minneapolis, denied Sheldon's motion for change of custody, and increased his child support obligation to $1,823 per month.

### SHELDON'S APPEAL

#### I

Sheldon contends the trial court erred in increasing his child support obligation. He does not dispute the stipulated amount of his child support obligation, $1,250 per month, is less than required under the child support guidelines. He argues, however, the court erred in applying the guidelines to compute his child support obligation, because the parties' stipulation rebutted the presumptive amount of support under the guidelines.

■ Section 14–09–09.7(3), N.D.C.C., creates "a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support." The presumption may be rebutted if, applying criteria enacted by the Department of Human Services which take into consideration the best interests of the child, a preponderance of evidence establishes the guideline amount is not the correct amount of child support.[2] N.D.C.C. § 14–09–09.7(3). Sheldon's argument involves the interrelationship of the presumptive amount of child support under the guidelines, the parties' stipulation,

---

1. Although Carla's motion was denominated as a motion to vacate the judgment, the parties and the trial court treated it as a motion to modify the judgment.

2. When the trial court heard and decided this case, the Department of Human Services had not enacted specific criteria to rebut the presumptive amount of child support. *See O'Callaghan v.* *O'Callaghan,* 515 N.W.2d 821 (N.D.Ct.App.1994). The child support guidelines were amended effective January 1995 to include specific criteria to rebut the presumptive amount of child support. *See* N.D.A.C. § 75–02–04.1–09 (effective January 1995). Our decision in this case is based on the pre–1995 guidelines.

and a trial court's continuing jurisdiction to modify child support.

■ We have said parental stipulations regarding child support are legitimate incidents of parental authority and control and are entitled to serious consideration by a court. *Tiokasin v. Haas*, 370 N.W.2d 559 (N.D. 1985). However, notwithstanding a parental agreement, a trial court has continuing jurisdiction under N.D.C.C. § 14–05–24 to modify child support. *Reimer v. Reimer*, 502 N.W.2d 231 (N.D.1993); *Rueckert v. Rueckert*, 499 N.W.2d 863 (N.D.1993).

In *Rueckert*, we considered a trial court's continuing jurisdiction to modify child support in the context of a parental stipulation in which the noncustodial parent relinquished claims to certain marital property in lieu of paying any future child support. We said:

"Although we encourage settlements in divorce actions ... '[w]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings.'"

*Rueckert*, 499 N.W.2d at 867.

We held that, based on the strong public policy for adequate support and maintenance of minor children, "parental agreements that prohibit or limit the power of a court to modify future child support are invalid." *Rueckert*, 499 N.W.2d at 868. We concluded the parties' stipulation violated public policy and was invalid. In *Reimer*, we followed *Rueckert* and held that a similar stipulation also contravened public policy and was invalid.

Under *Rueckert*, *Reimer*, and N.D.C.C. § 14–05–24, although a parental stipulation for child support is entitled to serious consideration, a trial court has continuing jurisdiction to modify support notwithstanding the stipulation. In both *Rueckert* and *Reimer*, the stipulations resulted in noncustodial parents waiving their rights to certain marital property in lieu of paying any future child support. In both cases the noncustodial parents made no child support payments, and our decisions rested on the overriding public policy that the best interests of the children require child support obligors to provide adequate support and maintenance for their minor children.

■ In *O'Callaghan v. O'Callaghan*, 515 N.W.2d 821 (N.D.Ct.App.1994), the court of appeals considered a parental stipulation in which the obligor agreed to pay more child support than required by the guidelines. The court of appeals said the agreement effectively furthered the best interests of the children by requiring more support than mandated by the guidelines and, therefore, did not violate the public policy for adequate support and maintenance for minor children. The court of appeals affirmed the trial court's determination that the parties' stipulation rebutted the presumptively correct amount of child support. Under *O'Callaghan*, the best interests of the children and public policy are satisfied by parental stipulations that require an obligor to pay more child support than required by the guidelines.

■ Here, relying on *O'Callaghan*, Sheldon asserts the parties' stipulation requires him to pay more current and future child support than mandated by the guidelines. Sheldon thus argues the stipulation satisfies the best interests of the children and rebuts the presumptively correct amount of support under the guidelines. We disagree.

In rejecting Sheldon's argument, the trial court ruled:

"Recognizing that the parties specifically agreed that Sheldon's child support obligation was subject to reevaluation (i.e., on or about January 1, 1993), and finding that the parties' agreement does *not* obligate Sheldon to pay *current* support in an amount *greater* than what would be required pursuant to the North Dakota Child Support Guidelines, the Court determines that Sheldon's child support obligation is fully reviewable—and may be modified either upward or downward as may be ap-

propriate—at this point in time." (Emphasis in original).

■ The parties' stipulation said Sheldon's child support obligation was subject to re-evaluation in January 1993 to determine if it adequately reflected half of the children's reasonable and necessary expenses. To the extent the stipulation purports to mechanically restrict Sheldon's child support obligation to half of the children's reasonable and necessary expenses, it violates public policy expressed in the child support guidelines by limiting the power of the court to modify future child support. *Reimer; Rueckert.*

Sheldon's attempt to quantify his expenditures while the children are with him and his future expenditures for the children's college expenses is speculative [3] and not persuasive. The guidelines "assume that the care given to the child during temporary periods when the child resides with the obligor ... do not substitute for the child support obligation." N.D.A.C. § 75–02–04.1–02(2). Moreover, the parties' stipulation requires both Sheldon and Carla to pay half of the children's reasonable tuition and room and board for up to four years of college. It also requires Sheldon to pay a reasonable share of the children's expenses incurred by Carla while the children attend college. The stipulation recognizes a shared obligation by Carla and Sheldon for the children's college expenses. *See* N.D.C.C. § 14–09–08 (recognizing mutual duty of each parent to provide children with support and education suitable to the children's circumstances).

We agree with the trial court that the parties' stipulation does not elevate Sheldon's current child support obligation to an amount greater than required by the guidelines.

This case is therefore distinguishable from *O'Callaghan.* The parties' stipulation does not rebut the presumptive amount of support under the guidelines, and we hold the trial court did not err in determining the guidelines were applicable to calculate Sheldon's child support obligation.

## II

### A

■ Sheldon contends the trial court made several errors in computing his child support obligation under the guidelines. He contends that, in computing his "net income," the court erred in not deducting his $13,800 contribution to a pension plan at the law firm in which he is a partner. He argues all of the firm's partners are deemed "owner-employees" for purposes of the pension plan, and his contribution to the plan is deductible from his gross income under N.D.A.C. § 75–02–04.1–01(4)(g), as an "employee" retirement contribution.

Under N.D.A.C. § 75–02–04.1–10 the presumptive amount of child support is a scheduled amount, which is based upon the "obligor's monthly net income and the number of children for whom support is being sought." *Shipley v. Shipley,* 509 N.W.2d 49 (N.D. 1993). The obligor's "net income" is computed by first determining "gross income" [4] and then subtracting the items listed in N.D.A.C. § 75–02–04.1–01(4). *Shipley.* Under N.D.A.C. § 75–02–04.1–01(4)(g), an obligor's gross income is reduced by "[e]mployee retirement contributions, other than FICA, where required as a condition of employment."

Here, the trial court found that, even if Sheldon was an "employee" of the law firm within the meaning of the child support

---

**3.** During oral argument, Sheldon admitted there was no current fund or account with money set aside for the children's college expenses.

**4.** Section 75–02–04.1–01(2) broadly defines "gross income" to mean

"income from any source, including salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, trust income, annuities income, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, retirement benefits, veterans' benefits (including gratuitous benefits), gifts and prizes to the extent each exceeds one thousand dollars in value, spousal support payments received, cash value of in-kind income received on a regular basis, income imputed from assets, and net income from self-employment, but excluding benefits received from means tested public assistance programs such as aid to families with dependent children, supplemental security income, and food stamps."

guidelines, his participation in its pension plan was not required as a condition of his employment. The court heard conflicting evidence about Sheldon's participation in his law firm's pension plan. A former partner in the law firm testified that participation in the pension plan was not a condition of employment. There was also testimony that although Sheldon and his partners had an unwritten understanding that each partner would make the maximum annual contribution to the plan, there was nothing in writing to confirm their understanding. The language of the plan gave the employer, the law firm, discretion to determine if and how much was contributed to the pension plan. The trial court was entitled to weigh the evidence, and under N.D.R.Civ.P. 52(a), the court's finding that Sheldon's participation in the plan was not required as a condition of his employment is not clearly erroneous.

■ Sheldon alternatively argues his contribution to the law firm's pension plan is a necessary and ordinary business expense which is deductible from his income from self-employment under N.D.A.C. § 75–02–04.1–01(5).[5] Under the circumstances of this case, we agree with the trial court that Sheldon's contribution to the pension plan is not a necessary and ordinary business expense for purposes of the child support guidelines.

### B

■ In determining income from self-employment, Sheldon contends the trial court erred in not allowing him to subtract certain principal payments for business loans.[6]

At trial, Sheldon introduced evidence summarizing his "computation of income for child support purposes." The summarized evidence said Sheldon had made more than $10,000 in principal payments during 1993. Although Sheldon testified that the summarized evidence on principal payments represented business loans, the trial court was not required to accept Sheldon's testimony. The court found Sheldon had "failed to satisfactorily document (i.e., prove up) the [summarized] payments." The court's finding is not clearly erroneous under N.D.R.Civ.P. 52(a).

### C

■ Sheldon contends the trial court erred in increasing his child support obligation effective to December 1993. The effective date for a modification of child support depends upon the facts of each case. *Shipley v. Shipley*, 509 N.W.2d 49 (N.D. 1993); *Olson v. Garbe*, 483 N.W.2d 775 (N.D. 1992). A trial court may modify a child support order as of the date of commencement of modification proceedings. *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D. 1989). Here, Carla's motion to modify was filed in December 1993, and the court did not err in modifying Sheldon's support obligation effective to that date.

### D

Sheldon argues the trial court erred in not striking the provision of the parties' stipulation requiring him to pay half of the children's out-of-pocket medical expenses not covered by health insurance. Sheldon argues those costs are automatically figured into his child support obligation.

■ The record does not show Sheldon asked the trial court to strike that provision of the parties' stipulation. We decline to consider Sheldon's request for the first time on appeal. *See Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978). Moreover, the

5. Section 75–02–04.1–01(5), N.D.A.C., says:
"'Net income from self-employment' means gross income of any organization or entity which employs the obligor, but which the obligor is to a significant extent able to control, less actual expenditures attributable to the cost of producing income to that organization or entity."

6. Section 75–02–04.1–05(2), N.D.A.C., says:
"After adjusted gross income from self-employment is determined, all business expenses which may be allowed for taxation purposes, but which do not require actual expenditures, such as depreciation and net operating losses, must be added to determine net income from self-employment. Business costs which are actually incurred and paid, but which may not be expensed for internal revenue service purposes, *such as principal payments on business loans*, may be deducted to determine net income from self-employment." (Emphasis added).

guidelines authorize a deduction from the obligor's gross income for "payments made on actual medical expenses of the child or children for whom support is being sought." N.D.A.C. § 75–02–04.1–01(4)(d). Sheldon's argument about double-dipping is not persuasive.

### E

■ Sheldon contends the trial court erred in requiring him to make his child support payments through the clerk of court instead of directly to Carla. Section 14–09–08.1(1), N.D.C.C., says "the court shall provide in its order that the [child support] payments be paid to the clerk of court, as trustee, for remittance to the obligee." Under that statute, the court did not err in requiring Sheldon to make his child support payments directly to the clerk of court.

### CARLA'S CROSS–APPEAL

### III

Carla asserts the trial court erred in granting Sheldon's motion for a protective order from certain discovery requests. Carla attempted to discover information about Sheldon's income through interrogatories and a deposition with a subpoena duces tecum which required him to bring certain documents to his deposition. Sheldon moved for a protective order. The court granted Sheldon's motion, holding he was not required to produce certain information requested in the subpoena duces tecum.[7] The court said information about Sheldon's current ability to pay child support could be determined from applicable tax returns.

On appeal Carla contends the tax returns do not accurately reflect Sheldon's income, because he transferred for collection a number of his accounts receivable at the law firm to Salveson Smith, Inc., a corporation owned and operated by his spouse, Julie Smith. Salveson Smith retains fifty percent of any of Sheldon's accounts receivable collected by it, and Carla asserts that, under N.D.A.C. § 75–02–04.1–08,[8] Salveson Smith's income is attributable to Sheldon because he has significant control of the corporation and the accounts which it receives for collection. Carla argues the trial court's protective order effectively precluded her from discovering relevant information about the extent of Sheldon's control over Salveson Smith.

■ Rule 26(b)(1), N.D.R.Civ.P., authorizes discovery of "any matter, not privileged, which is relevant to the subject matter

7. The protective order encompassed the following information:

"2. Any and all financial statements from any business entity in which [Sheldon] has any interest as may have been provided to any financial institution from November 1, 1991 to date.

"3. Any and all personal financial statements [Sheldon] may have given to any financial institution from November 1, 1991 to date.

"4. All personal bank statements, check and savings from November 1, 1991 to date.

"5. All bank statements of any business entity in which [Sheldon] has an interest from November 1, 1991 to date.

"6. The accounts receivable ledger as of December 31, 1993 for any and all business in which [Sheldon] has any interest.

"7. The Balance Sheet of any and all businesses in which [Sheldon] has any interest as of December 31, 1993. Although this demand is continuing in nature, if a December 31, 1993 balance sheet for any such business has not yet been prepared, pending such preparation provide a copy of the last balance sheet that has been provided for any such business.

"8. The Income and Expense Statement for any and all businesses in which [Sheldon] has any interest as of December 31, 1993. If quar-

terly or other periodic statements were prepared during the year 1993 for any such entity, such periodic statements are here also requested.

"9. The general ledger and any other recording journals of any and all businesses in which [Sheldon] has any interest for the year 1993.

"10. The itemized billings from any and all credit cards used by [Sheldon] for either business or personal purposes during the years 1991, 1992 and 1993.

"11. Any and all ledgers, notes, memorandums or other written things upon which [Sheldon] records or otherwise memorializes receipt of cash from clients which cash is not run through the formal office bookkeeping system."

8. Section 75–02–04.1–08, N.D.A.C., says:

"The income and financial circumstances of the spouse of an obligor should not be considered as income for child support purposes unless the spouse's income and financial circumstances are, to a significant extent, subject to control by the obligor as, for instance, where the obligor is a principal in a business employing the spouse."

involved in the pending action" and further provides "[i]t is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Under N.D.R.Civ.P. 26(b)(1), the court may limit discovery that is unreasonably cumulative or obtainable from other sources.

█ A trial court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion. *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D.1982). *See Guskjolen v. Guskjolen*, 391 N.W.2d 639 (N.D.1986). A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misapplies or misinterprets the law. *Knudson v. Director, North Dakota Dept. of Transportation*, 530 N.W.2d 313 (N.D.1995).

In granting Sheldon's motion for a protective order, the trial court focused on the guideline definitions of "gross income," "net income," "net income from self-employment," "in-kind income," and said Sheldon's "current ability to pay child support can accurately be determined by reviewing—and questioning [Sheldon] with respect to—his personal tax returns (and accompanying schedules) for the past three (3) years; business tax returns (and accompanying schedules), for the same time frame, for any business entities in which [Sheldon] has an interest; and, [Sheldon's] ANSWERS to [Carla's] interrogatories."

█ We agree with the trial court that an obligor's ability to pay child support can ordinarily be determined from tax returns. *See* N.D.A.C. § 75–02–04.1–02(7) ("Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income."). However, tax returns do not necessarily reflect the degree of control an obligor has over a spouse's income, such as income transferred by the obligor to a corporation owned by the obligor's spouse. For purposes of calculating net income under the child support guidelines, N.D.A.C. § 75–02–04.1–08 precludes an obligor from gratuitously shifting income to a spouse in order to reduce the obligor's income. Information about the degree of an obligor's control over a spouse's income, as well as whether the spouse's income represents fair compensation for services rendered, is relevant to determine the obligor's income and corresponding child support obligation.

█ Here, in granting Sheldon's motion for a protective order, the trial court recognized Sheldon had an "undetermined interest" in Salveson Smith, but failed to consider whether Sheldon controlled Salveson Smith to a significant extent. We believe the court misapplied the law about the income of an obligor's spouse and therefore abused its discretion regarding discovery of information about Salveson Smith. Although the trial court properly exercised its discretion to limit Carla's request to produce certain information, we hold she was entitled to discovery on the issue of the extent of Sheldon's control over Salveson Smith and its income. We remand for further proceedings on that issue. On remand the trial court is free to consider appropriate safeguards to control the disclosure of confidential information from Sheldon's law firm.

## IV

### A

█ Carla contends that, in computing Sheldon's "net income" under N.D.A.C. § 75–02–04.1–01(4), the trial court erred in applying single taxpayer status for Sheldon's federal and state income tax obligations. We agree.

Section 75–02–04.1–01(4)(a) and (b) require application of "standard deductions and tax tables" for determining "net income" under the child support guidelines. *Shipley v. Shipley*, 509 N.W.2d 49 (N.D.1993). In *Shipley*, the obligor claimed single marital status with no dependents for his actual federal and state income tax withholding. We held that, in computing net income under the guidelines, the obligor was not automatically entitled to deduct the actual amount of federal and state taxes withheld by an employer; rather, the obligor was only entitled to de-

duct the amount to be withheld under standard deductions and tax tables.

Here, Sheldon was not entitled to subtract from his gross income the amount of taxes withheld under a fictitious filing status, single with no dependents. Instead, he was entitled to subtract from his gross income the amount to be withheld under "standard deductions and tax tables." On remand, Sheldon's child support obligation should be computed on the basis of "standard deductions and tax tables."

### B

■ Carla also asserts the trial court erred in computing Sheldon's gross income by failing to include $1,680 in rent from Salveson Smith for office space in Sheldon's home and $1,026 from another business entity, M & S Ventures. Because we have remanded for further proceedings regarding discovery of information about Salveson Smith, we express no opinion about that income.

Sheldon does not disagree with Carla's assertion about his income from M & S, and the record does not establish the trial court included that income in his gross income. On remand the trial court should include that income in Sheldon's gross income for purposes of determining his child support obligation.

### V

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

SANDSTROM, Acting C.J., LEVINE and MESCHKE, JJ., and GORDON O. HOBERG, Surrogate Judge, concur.

GORDON O. HOBERG, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.