**Elaine WILHELM, Plaintiff and Appellee,**

v.

**Rod D. WILHELM, Defendant and Appellant.**

**Civil No. 950207.**

Supreme Court of North Dakota.

Feb. 13, 1996.

Rauleigh D. Robinson, Mandan, for plaintiff and appellee.

David R. Bliss, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Rod D. Wilhelm appealed from an amended divorce judgment reducing his child support obligation. We conclude that the trial court did not err when it refused to consider Rod's rodeo losses when computing Rod's child support obligation, and affirm.

Rod Wilhelm and Elaine Wilhelm were granted a divorce on January 2, 1992. In the original judgment, Elaine received custody of their three minor children, subject to Rod's reasonable visitation. Rod was ordered to pay child support of $900 per month. On January 10, 1995, Rod moved the court to modify the original judgment to reduce his child support obligation to $758 per month in accordance with the child support guidelines.

At the motion hearing, Rod testified that he moved to Aurora, Colorado, in January 1992, following the divorce. In May 1992, he began working as a line equipment operator for Sturgeon Electric, his present employer. Aside from his employment at Sturgeon Electric, Rod testified that he received additional "income" in 1993 and 1994 from rodeo. Rod's income tax returns from 1992 and 1993, his W–2 for 1994, and an income summary for 1992, 1993, and 1994 were offered as evidence. His "income and expenses" from rodeo for 1993 appeared as a business loss of $6,362.00 on his 1993 income tax return. As Rod testified to his "income" from rodeo for 1994, which was a loss of $5,874.00, the trial judge explained that he did not consider Rod's rodeo losses to be relevant to the determination of child support. The trial court described Rod's rodeo participation as something which Rod does voluntarily for entertainment, much like a hobby, that is not income producing. In light of the trial court's ruling and to "preserve the record," Rod introduced an exhibit revealing his rodeo earnings and expenses for 1995, which also showed a net loss.

After the hearing, the trial court issued a memorandum opinion explaining that "although the federal government allows deductions for this enterprise [rodeo], this activity is more in the form of a hobby." The trial court stated that it would not consider Rod's rodeo activities when computing his child support obligation as long as Rod continued to hold his full-time position with the electric company. Amending the judgment based on Rod's monthly net income, the trial court reduced Rod's child support obligation to $792.00 per month. Because Rod had an arrearage of more than $24,000.00, the trial court further ordered Rod to pay $158.00 per month, for a total monthly payment of $950.00 to commence on May 1, 1995. On appeal, Rod argues that the trial court erred when it did not consider his rodeo participation when computing his "gross income" for child support purposes.

A trial court's determination to modify child support is treated as a finding of fact. *Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993). Findings of fact will not be reversed on appeal unless they are clearly erroneous. N.D.R. Civ. P. 52(a); *Neppel v. Neppel,* 528 N.W.2d 371 (N.D.1995). A finding is clearly erroneous if, on review of the entire record, we are left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law. *Rueckert, supra.* Questions

of law are fully reviewable on appeal. *Gabriel v. Gabriel,* 519 N.W.2d 293 (N.D.1994).

Under the child support guidelines, gross income "means income from any source, in any form, ... includ[ing] ... net income from self-employment." N.D.A.C. § 75–02–04.1–01(5). Rod asserts that his rodeo "income" should be considered "net income from self-employment" which is defined as "gross income of any organization or entity which employs the obligor, but which the obligor is to a significant extent able to control, less actual expenditures attributable to the cost of producing income to that organization or entity." N.D.A.C. § 75–02–04.1–01(8). Rod contends that his "net income from self-employment" should be calculated pursuant to section 75–02–04.1–05(1), N.D.A.C.:

> "Expenses attributable to the cost of producing income vary from business to business. Deducting expenses from the gross income of the business determines the adjusted gross income, according to internal revenue service terminology. If the latest tax return is not available or does not reasonably reflect the income from the business, a profit and loss statement which will more accurately reflect the current status of the business must be used."

We have recognized the strong public policy, embodied in our statutes and decisions, that parents have an obligation to support their children. *See* N.D. Cent.Code § 14–09–08 [stating that parents have a mutual duty to support their children]; *Guskjolen v. Guskjolen,* 499 N.W.2d 126 (N.D.1993) [describing the parental obligation to financially support children]; *Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993) [holding that a child support stipulation which prohibited or limited modification violated the public policy for support of minor children]; *Koch v. Williams,* 456 N.W.2d 299, 302 (N.D.1990) [acknowledging the State's strong public policy "of protecting the best interest of children by assuring them of parental support and maintenance"]; *Tiokasin v. Haas,* 370 N.W.2d 559 (N.D.1985). The child support

guidelines, authorized by section 14–09–09.7, NDCC, explain that "considerations of policy require that all parents understand the parental duty to support children to the extent of the parent's ability." N.D.A.C. § 75–02–04.1–04.

■ Under the guidelines, Rod's losses from the rodeo are pertinent to the calculation of his gross income only if his rodeo involvement is indeed "self-employment." We interpret "self-employment" within the meaning of the child support guidelines to differentiate between a vocation, pursued at least in part to sustain the obligor and the obligor's family, and an avocation, performed primarily for enjoyment without the reasonable expectation that the activity will be used to further the obligor's child support obligation. Otherwise, an obligor would be able to reduce his or her gross income, and thereby the child support amount, simply by characterizing as "self-employment" any diversion that occupies the obligor's time and consumes the obligor's resources, and then considering the loss when calculating gross income.[1] We refuse to undermine the well-established duty of parents to support their children. Thus, in this instance, we must decide whether the trial court's portrayal of Rod's rodeo participation as a "hobby" was clearly erroneous.

■ Rod contends that if he would have been permitted to testify as to his rodeo activities, the trial court "would have received evidence to support [his] assertion that his rodeo activities are self-employment, not merely a 'hobby'...." To support his argument that he is a self-employed "rodeo performer," Rod states that he began participating on the national rodeo circuit in 1992 and increased his participation in 1994 and 1995; he filed a Schedule C tax form as a "rodeo performer" for tax year 1993; and his 1993 federal and state tax obligation was calculated considering his rodeo loss. Rod did not make an offer of proof as to any additional evidence that the trial court would have received. N.D.R. Evid. 103(a)(2); *Gorsuch v. Gorsuch,* 392 N.W.2d 392, 394 (N.D.

---

1. Under the facts of this case, it is unnecessary to address whether an obligor's children would share in any net gain, or "windfall," which might result from the obligor's pursuit of an avocation. *See Helbling v. Helbling,* 541 N.W.2d 443 (N.D. 1995).

1986) [stating that Rule 103(a)(2), N.D.R. Evid., "clearly directs the parties to create a record which will permit informed appellate review"]. Although a Schedule C "Profit or Loss from Business" attached to a Federal Income Tax Return, Form 1040 may be evidence of "self-employment," it is not conclusive as to whether Rod is "self-employed" for child support purposes. *See, e.g., Shipley v. Shipley*, 509 N.W.2d 49 (N.D.1993) [obligor was not entitled to automatically deduct the actual amount of withholding].

In this instance, Rod did not begin to participate as a senior bull rider on the rodeo circuit until after the divorce at a time when he had a child support obligation to maintain; thus, his voluntary embarkment in the rodeo must be viewed within the context of his pre-existing child support obligation. Rod alleges that "the 'start up' costs for beginning a rodeo career often exceed income for several years." But, at 42 years of age, Rod did not offer affirmative evidence of his longevity for the rodeo or of any long-term benefits his children would receive from his rodeo participation. *See, e.g., Olson v. Olson*, 520 N.W.2d 572, 574 (N.D.1994) [adopting a "rule of reason" to evaluate an obligor's voluntary change in employment and earnings].

After examining the record before us, we do not conclude that the trial court erred when it determined that Rod's rodeo participation was an avocation not warranting consideration when computing Rod's child support obligation. We affirm the decision of the trial court. The appellee's request for attorney fees on appeal is denied.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.