In the Interest of K.G., a child.

Kathy McMERTY, Petitioner
and Appellee,

v.

A.M., Mother; Respondent and Appellant,

and

A.G., Father; K.G., Child; and his Guardian ad Litem, Anne E. Summers, Attorney, Respondents.

Civil No. 950428.

Supreme Court of North Dakota.

June 27, 1996.

Rehearing Denied July 18, 1996.

Bonnie P. Humphrey, Special Assistant State's Attorney, Bismarck, for petitioner and appellee.

Kent M. Morrow, Severin and Ringsak, Bismarck, for respondent and appellant.

VANDE WALLE, Chief Justice.

A.M. appealed from a juvenile court order confirming the judicial referee's findings and recommendations on a motion for payment of costs and expenses for care of a child. We conclude that the juvenile court did not err by utilizing the child support guidelines to determine A.M.'s financial ability under section 27–20–49, NDCC, to pay costs and expenses for her child in foster care, and we affirm.

On March 28, 1995, a judicial referee found K.G., born January 10, 1983, to be a deprived child in need of protection, and an unruly child in need of treatment and rehabilitation. The referee recommended to the judge of the juvenile court that, in the child's best interests, legal custody be removed from K.G.'s parents and placed with the Director of Burleigh County Social Services for a period of eighteen months. The referee further recommended that the parents provide financial support for the child in accordance with the child support guidelines. On April 5, 1995,

the referee's findings and recommendations were confirmed by the juvenile court.

From January 30, 1995, through June 1995, the North Dakota Department of Human Services and the Burleigh County Social Service Board expended $8,477.00 for K.G.'s foster care. After June 1995, the Department and Burleigh County continued to expend $1,629.00 per month for K.G.'s support. Pursuant to section 27–20–49, NDCC, the State and the Burleigh County Social Service Board moved the court to determine A.M.'s financial ability to pay all or part of the costs and expenses for the care of her child. Determining that A.M. had a duty to support her minor child, the juvenile referee used the child support guidelines to calculate A.M.'s support obligation. Under the guidelines, A.M.'s monthly net income was computed at $1,007.00 per month, which included income she received from wages and child support. Since A.M. had four other children in her home, the referee used the multiple-family formula under section 75–02–04.1–06.1, NDAC, to determine A.M.'s obligation of $192.00 per month.

At the hearing, A.M. testified that her husband, who is not the father of her children, is unemployed and provides limited financial support for the family. After considering A.M.'s situation, the referee found "an ability-to-pay order" to be appropriate. The referee recommended that A.M. pay a minimum of $100.00 per month toward her obligation, with the balance accruing until K.G. leaves foster care or becomes emancipated, whichever occurs first. The referee further recommended that A.M. reimburse Burleigh County Social Services for past support in the amount of $1,152.00. As allowed by North Dakota Supreme Court Administrative Rule 13, A.M. requested the juvenile court to review the referee's findings and recommendations, which the juvenile court confirmed.

■ On appeal, A.M. does not contest that she has an obligation to support her son while he is in foster care. Indeed, it is well-established that a parent has a duty to support his or her child. *See* N.D. Cent.Code § 14–08.1–01 (providing that a person legally responsible for the support of a child is liable for "the reasonable value of physical and custodial care or support which has been furnished to the child by any person, institution, agency, or county social service board"); N.D. Cent.Code § 14–09–08 (recognizing parents' mutual duty to support their children); *see also Wilhelm v. Wilhelm*, 543 N.W.2d 488 (N.D.1996) [identifying the strong public policy embodied in our statutes and decisions that parents financially support their children]. Rather, A.M. asserts that the referee relied solely upon the child support guidelines to determine her support obligation, failing to consider her "financial ability" under section 27–20–49, NDCC, to pay the amount prescribed by the guidelines.

More than one title of the North Dakota Century Code addresses the obligation parents have to support their children. *See* N.D. Cent.Code Title 14, "Domestic Relations and Persons"; N.D. Cent.Code Chapter 27–20, "Uniform Juvenile Court Act"; N.D. Cent.Code Chapter 50–09, "Aid to Dependent Children." In 1969, the Legislature enacted the Uniform Juvenile Court Act, including section 27–20–49, NDCC, which provides that if, after due notice to the parents and after affording them an opportunity to be heard, "the court finds that they are financially able to pay all or part of the costs and expenses" associated with the foster care of the child, the court may order them to make payment.

Under section 14–09–09.7(1), NDCC, the Legislature directed the Department of Human Services to "establish child support guidelines to assist courts in determining the amount that a parent should be expected to contribute toward the support of the child.…" *See Perala v. Carlson*, 520 N.W.2d 839 (N.D.1994). Following the Legislature's directive, the Department promulgated the "Child Support Guidelines." *See* N.D. Admin. Code Chapter 75–02–04.1. The guidelines include section 75–02–04.1–11, NDAC, which addresses parents' financial responsibility for children in foster care.

A.M. argues that section 14–09–09.7, NDCC, is a general statute pertaining to the general support of children, whereas section 27–20–49, NDCC, is a specific statute addressing the payment of costs associated with foster care imposed in juvenile court

proceedings. A.M. contends that her responsibility is governed by the "specific statute" and that the referee erred by referring "solely" to the child support guidelines, which A.M. describes as "only a general guide to one's ability to support one's child." Asserting that section 27–20–49(3), NDCC, "requires more than a rote" application of the guidelines, A.M. urges that a determination of whether a parent is "financially able to pay all or part of the costs and expenses" requires an individualized computation of the parent's income and expenses. Specifically, A.M. claims that the referee and juvenile court failed to consider her "normal monthly expenses." We disagree with A.M.'s reading of the statutes.

Section 50–06–16, NDCC, authorizes the Department to "adopt rules necessary to carry out the responsibilities of the department in conformity with any statute administered or enforced by the department." Not only is section 14–09–09.7, NDCC, a statute administered by the Department, under section 14–09–08.4, NDCC, and chapter 50–09, NDCC, particularly section 50–09–06.1, NDCC, the Department has responsibility for children receiving public assistance including children in foster care. These statutes constitute ample authority for the Department to include children in foster care within the child support guidelines.

We interpret statutes in context. *Johnson v. North Dakota Workers' Comp. Bureau,* 484 N.W.2d 292 (N.D.1992). When statutes relate to the same subject matter, we make every attempt to harmonize and give meaningful effect to each statute without rendering one or the other useless. *Van Raden Homes v. Dakota View Estates,* 520 N.W.2d 866 (N.D.1994); *State v. Mees,* 272 N.W.2d 61 (N.D.1978); *see also, Boeddeker v. Reel,* 517 N.W.2d 407 (N.D.1994) [reading Title 14 and Chapter 27–20 to complement each other when pertaining to child custody]. Only when conflicting statutory provisions cannot be reconciled do we apply the rule of section 1–02–07, NDCC, that specific provisions govern over general provisions. *Van Raden Homes, supra; see also Birst v. Sanstead,* 493 N.W.2d 690 (N.D.1992) [stating the presumption against repealing or amend-

ing legislation by implication, which may be overcome if conflict between the statutes is irreconcilable]. In this instance, we are able to harmonize the statutes.

We begin by noting that the child support guidelines examine a parent's financial ability to pay costs and expenses for care of the child. For instance, the guidelines consider the obligor's monthly net income and number of children for whom support is being sought. Although there is a rebuttable presumption under section 14–09–09.7(3), NDCC, that an application of the guidelines will result in the correct amount of child support, the presumption may be rebutted "if a preponderance of the evidence ... establishes, applying criteria established by the public authority which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the correct amount of child support." *Id.* Under section 75–02–04.1–09, NDAC, the Department has established rebutting factors which evaluate the obligor's financial ability to pay. *See* N.D. Admin. Code § 75–02–04.1–09(2)(b), (g), (h), (i), (j), (k). Similarly, the Department excluded from consideration evidence of the obligor's "subsistence needs, work expenses, and daily living expenses." N.D. Admin. Code § 75–02–04.1–09(1)(a); *Horner v. Horner,* 549 N.W.2d 669 (N.D. 1996). In essence, these needs and expenses were incorporated into the child support schedule. We conclude that the guidelines already contemplate a parent's financial ability to pay and permit an individualized examination of the presumption established by the guidelines so that, reading the statutes together, the implementation of the guidelines satisfies section 27–20–49(3), NDCC.

Furthermore, when interpreting statutes, we follow the "cardinal rule" of statutory construction, that our "interpretation must be consistent with legislative intent and done in a manner which will accomplish the policy goals and objectives of the statutes." *O'Fallon v. Pollard,* 427 N.W.2d 809 (N.D.1988); *see Trinity Medical Center, Inc. v. Holum,* 544 N.W.2d 148, 152–53 (N.D.1996) [quoting the "cardinal rule" and citing to section 1–02–01, NDCC, which directs that code provisions are to be "construed liberally, with a view to

effecting its objects and to promoting justice"]; *Heartview Foundation v. Glaser,* 361 N.W.2d 232, 235 (N.D.1985) [explaining that interpretation of administrative regulations, in addition to the interpretation of statutes, must be consistent with legislative intent and in furtherance of the policy goals and objectives].

Both Title 14, NDCC, and Chapter 27–20, NDCC, further the policy that parents have an obligation to support their children. By directing the Department of Human Services to promulgate the child support guidelines, the Legislature encouraged uniformity in the calculation of child support amounts. Testimony of Blaine Nordwall before House Social Services and Veterans' Affairs Committee on SB 2421 (March 10, 1983). Reflecting its objective of uniformity, the Legislature has defined an "obligee" to include "a state or political subdivision to whom a duty of support is owed." N.D. Cent.Code § 14–09–09.10(8). If we were to determine that the child support guidelines were not applicable for deciding a parent's financial ability under section 27–20–49, NDCC, the courts would be left without the assistance which the guidelines provide. Such an interpretation would inevitably lead to inconsistent child support amounts, in direct contravention of legislative intent. We see no basis for deviating from the Legislature's preference for uniformity, or the child support guidelines, to calculate a parent's support obligation to his or her child in foster care. *See Perala, supra* [recognizing the legislative history of section 14–09–09.7, NDCC, and indicating that the statute was amended to conform with federal regulations]; *see also* 42 U.S.C. § 667(a) ["Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. . . ."]; 45 C.F.R. § 302.56 ["the State shall establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the State"]; *In re Joshua W.,* 94 Md.App. 486, 617 A.2d 1154, 1161 (1993) [relying on federal provisions and legislative intent to determine that the child support guidelines were to be used "in all child support cases, including those . . . in-volving government financed child care and no custodial parent"].

We conclude that the referee and juvenile court did not err by applying the child support guidelines to determine A.M.'s financial ability to pay support for her child. Because A.M. did not offer evidence to rebut the presumption that the guideline amount is the correct amount, we affirm.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.