James L. WOLF, Plaintiff and Appellant,

v.

Kathryn A. WOLF, Defendant
and Appellee.

Civil No. 960132.

Supreme Court of North Dakota.

Dec. 20, 1996.

Steven J. Wild, Sadowsky & Wild Law Office, Bowman, for plaintiff and appellant.

Diane F. Melbye, Melbye Law Office, Dickinson, for defendant and appellee.

## VANDE WALLE, Chief Justice.

James Wolf, the Plaintiff, appealed from the judgment of divorce awarding child support, rehabilitative spousal support and dividing the marital property. James claims the court erred in its findings. We affirm in part and reverse in part.

James and Kathryn Wolf were married in 1975. There were five children born during the marriage: Jill, age 20; Andrea, age 16; Jayme, age 15, and; Tessa and Teresa, who are twins, age 13. Tessa has a learning disability which causes her to function at a much lower educational level than her age. During the course of the marriage, Kathryn was primarily a homemaker while James worked for Dakota Gasification Company in Beulah, North Dakota. In 1990, James was fired from the Beulah plant for failing to pass a drug test. Shortly after this, the Wolf family moved from Pick City to Dickinson where Kathryn intended to complete her education.

The couple separated on December 27, 1994, and James filed for divorce on January 18, 1995. An ex parte interim order was filed on January 19 and gave custody of the children to Kathryn and ordered James to pay child support in the amount of $1,217.00 per month and spousal support in the amount of $500.00 per month. Sometime following the implementation of this order, James left Dickinson and found employment through the Boilermakers Union of Minnesota. James currently resides in Seward, Pennsylvania, where he works as a boilermaker. James' employment is sporadic and he is employed on a need-only basis for work which often requires a great amount of traveling throughout the country. Kathryn still resides in Dickinson where she is employed at St. Joseph's Hospital as an outpatient coder. She is enrolled at Dickinson State University and is trying to finish her education.

The trial court awarded both legal and physical custody of the children to Kathryn and ordered James to continue to pay child support in the amount of $1,217.00 until the oldest minor child reached the age of 19 or graduated from high school. The child support would then be reduced by $200.00 and continue to be reduced by the same amount as each child graduated from high school or reached the age of 19. At that time, the child support obligation would terminate. The trial court further ordered James to pay rehabilitative spousal support in the amount of $500.00 per month until the child support obligation was terminated and thereafter a sum of $300.00 per month for another five years.

In the property division, the trial court divided the personal property and debts incurred during the marriage equally, but awarded Kathryn all her interests in real property transferred to her by her mother during the course of the marriage. James was awarded his pension annuity and Kathryn was given no right, claim or interest in

this asset. James raises three issues on appeal.

I

■ James first challenges the child support award. Determinations of child support are findings of fact, and governed by the "clearly erroneous" standard of review. N.D.R.Civ.P. 52(a). *Nelson v. Nelson,* 547 N.W.2d 741, 743 (N.D.1996); *Dalin v. Dalin,* 545 N.W.2d 785, 788 (N.D.1996); *Wilhelm v. Wilhelm,* 543 N.W.2d 488, 489 (N.D.1996). "A finding is clearly erroneous if, on review of the entire record, we are left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law." *Wilhelm,* 543 N.W.2d at 489.

A trial court, in order to award the proper amount of child support, must determine the obligor's net monthly income under the child support guidelines and make an adequate written finding on the issue. N.D.A.C. § 75–02–04.1–02(3) & (6); *Mahoney v. Mahoney,* 538 N.W.2d 189, 194 (N.D.1995). "Income must be documented through the use of tax returns, current wage statements, and other information sufficient[ ] to fully apprise the court of all gross income." *Mahoney,* 538 N.W.2d at 194 (quoting N.D.A.C. § 75–02–04.1–02(7)). When a proper finding is made, there is a rebuttable presumption that a child support award which is made under these guidelines is correct. N.D.C.C. § 14–09–09.7(3). *Smith v. Smith,* 538 N.W.2d 222, 225 (N.D.1995). The guidelines also provide for several deductions which are subtracted from the gross income in order to determine the obligor's monthly net income. N.D.A.C. § 75–02–04.1–01(7).[1]

■ Here, the trial court found James "should consistently make over $45,000.00 annually and that his net income after expenses for guideline purposes should be about $3,200.00 per month." The trial court then used this figure to determine the proper child support award using the guidelines.

These vague figures were used despite the fact it appears adequate evidence was admitted for the trial court to make a precise finding as to the gross and monthly net incomes, as the guidelines require. In determining the $45,000.00 figure, the trial court did not cite to any of this specific evidence or consider any specific deductions claimed by James. These are not adequate findings under the child support guidelines. Therefore, we remand for a specific determination of income by which to determine proper child support under the guidelines. Although there appears to be sufficient evidence in the record to make such a finding, should the trial court determine more evidence is necessary to comply with our remand, the trial court may receive such evidence in its discretion.

II

James next challenges the spousal support award and the property division.

A

■ Spousal support awards, like that of child support, are findings of fact governed by the "clearly erroneous" standard of review. *Kouba v. Kouba,* 544 N.W.2d 142, 143 (N.D.1996). However, unlike child support awards, detailed findings of fact, while helpful, are not required, provided we can determine, on appeal, the reasons the trial court granted the award. *Id.* (citing *Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994)). A trial court may award rehabilitative spousal support when one spouse has been disadvantaged and to equalize the burden of the divorce. *Lill v. Lill,* 520 N.W.2d 855, 856 (N.D.1994) (citing *Weir v. Weir,* 374 N.W.2d 858 (N.D.1985)). In determining a proper award of spousal support, a trial court must consider the *Ruff–Fischer* guidelines. *Id.* These guidelines include:

"The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the

---

1. These include; federal and state income tax, social security and Medicare contributions, a portion of health insurance premiums, actual medical expenses for children, union dues when required as a condition of employment, employee retirement contribution required as a condition of employment, and special equipment or clothing required as a condition of employment. N.D.A.C. § 75–02–04.1–01(7)(a)–(h).

marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Lill,* 520 N.W.2d at 856 (quoting *Weir,* 374 N.W.2d at 862).

■ Here, despite the fact the trial court tied the spousal support award to the child support award without making an adequate finding as to James' monthly net income, we, nevertheless, understand its reasons and we do not find the award is clearly erroneous. Kathryn is a mother of four children, one of whom has special needs which may cause the child never to become emancipated from her mother's care. Kathryn is currently employed a position which pays her just over six dollars an hour, while at the same time trying to obtain her Bachelor's Degree. When she receives the degree, she testified her employer will move her to a position in which she will earn over eight dollars an hour. She is clearly economically disadvantaged when compared with James. We conclude the trial court's finding was not clearly erroneous, and affirm the spousal support award.

### B

■ When dividing marital property, the trial court may use its discretion to make a fair and equitable division of marital property. *Fenske v. Fenske,* 542 N.W.2d 98, 103 (N.D.1996) (citing *Nastrom v. Nastrom,* 284 N.W.2d 576, 580 (N.D.1979)). *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994). In determining what is an equitable property division, the trial court must consider the *Ruff–Fischer* guidelines of property division. *Lill,* 520 N.W.2d at 857. Here, the trial court concluded Kathryn was entitled to the interest in real property conveyed to her by her mother, while denying her any right to James' pension annuity. James claims this income should be imputed to Kathryn so as to reduce spousal support.

We have stated, "inherited property should be set aside to the heir where fairly possi-

ble." *Gaulrapp,* 510 N.W.2d at 621 (quoting *Olson v. Olson,* 445 N.W.2d 1, 4 (N.D.1989)). Kathryn has a 1/4 future interest in real property which has an annual income producing potential of $7,000.00. However, Kathryn does not currently receive any proceeds from this property and will not until her mother dies. This arrangement between Kathryn and her mother was made prior to the divorce and was not made in anticipation of the divorce. James' pension annuity has a value of $5,652.00. Given the great disparity between James and Kathryn's income, the trial court correctly did not impute the proceeds from the interest in land to Kathryn. *See Gaulrapp,* 510 N.W.2d at 622 (citing *Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D. 1990)) (stating spousal support and property divisions should often be considered together when there is a large difference in earning power). The property division is not clearly erroneous and we affirm.

We affirm the trial court's award of spousal support and property division, and reverse the trial court's child support award and remand for more accurate findings as to James' gross and net monthly income.

SANDSTROM, NEUMANN and MARING, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

The majority opinion affirms the trial court's award of spousal support and property division. I join in those dispositions.

The majority reverses the trial court's determination of child support and remands "for more accurate findings as to James' gross and net monthly income." The trial court found:

> While Mr. Wolf's income may fluctuate somewhat, the Court finds that Mr. Wolf should consistently make over $45,000.00 annually and that his net income after expenses for guideline purposes should be about $3,200.00 per month.

From those findings, the trial court correctly applied the guideline schedule in NDAC 75–02–04.1–10 and directed child support of $1,217 monthly for four children.

The majority declares the findings of $45,000 gross income annually and $3,200 net monthly are "vague figures" although there was "adequate evidence . . . admitted for the trial court to make a precise finding as to the gross and monthly net incomes, as the guidelines require," and then declares the "trial court did not cite to any of [the] specific evidence or consider any specific deductions claimed by James." The majority rules "[t]hese are not adequate findings under the child support guidelines." I cannot agree here.

Though not cited in the majority opinion, the relevant guideline says:

> Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined.

NDAC 75–02–04.1–02(10). If Kathryn Wolf were appealing, I might agree that "over $45,000" and "about $3,200" would be too "vague" from this record that suggests James' gross and net income was larger than that found, because James offered little or no evidence to support his itemized deductions of $15,026 on his 1994 income tax return that included $13,659 in unreimbursed employee expenses. Virtually no evidence was offered that these claimed employee expenses were "required as a condition of employment," as NDAC 75–02–04.1–01(7)(f) and (h) require. Since Kathryn has not appealed, however, and since James is asserting that the income findings are too high, I do not understand the majority opinion. "Bright lines" may be desirable in child support findings, but it is difficult to imagine how they could be more vivid on this record.

The trial court's findings square with the only satisfactory evidence of income and expenses in the record—Exhibit C, the 1994 Income Tax Return for James and Kathryn. Appropriately, Kathryn's brief offered a standard child-support "worksheet" based on that 1994 tax return, although neither party apparently submitted a worksheet to the trial judge. Kathryn's "worksheet" shows James' share of the reported $58,431 income to be $50,945, a federal income tax on it of $3,429, state income taxes of $480, and FICA taxes of $3,667, for an annual net of $43,339 and a monthly net of $3,614 that would schedule monthly child support of $1,368.

In my opinion, this computation is within the range of the only satisfactory evidence of James' wage income and expenses, the 1994 tax return. Indeed, the trial court found slightly more favorable figures for James, $3,200 monthly net income and $1,217 monthly support, but Kathryn is not complaining.

James' whole argument here is that his Exhibit 1, "profit and loss statement (unaudited)" for a partial 1995 year through November 7, 1995, was the "only evidence" of his recent income. In my opinion, the trial court did not need to give this fragmented and unsupported information any attention. NDAC 75–02–04.1–02(7) (part) directs:

> Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income.

*Compare* NDCC 14–09–08.6(1)(b) (for periodic review of child support, "[t]he obligor shall provide . . . a verified copy of the latest income tax return, filed with the internal revenue service or any state official administering a state income tax, which accurately reports the obligor's income for a fiscal year ending no more than seventeen months prior to the date of the review"). In my opinion, this "unaudited" list of $40,607 in income had little or no weight when it was unsupported by current wage statements or stubs and was only for part of a year, claimed "work-related" expenses over $11,060 without supporting documents or verification, claimed total taxes withheld of $8,417 (compared to less than $7,800 paid for the prior year with more income), and did not "annualize" 1995 income and expenses.

We have cautioned that a partial year's documentation must be carefully weighed and need not be accepted. *See Mahoney v. Mahoney*, 538 N.W.2d 189, 195 (N.D.1995):

> The averaging of a partial tax year with the prior, full year in the new clinic was error unless appropriate adjustments were made to the partial year to reflect only appropriate deductions, and to reflect the

proportionate annual effect of deductions occurring unevenly throughout the year. The guidelines direct:

Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly in instances involving self-employment, *information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.*

NDAC 75–02–04.1–02(7) (part; emphasis supplied). Our conclusion here is reinforced by the trial court's specific finding that "it is likely that [Tim's] income will steadily increase within the foreseeable future." Therefore, we believe that the trial court should have used only Tim's 1993 income from his tax returns and that it was clearly erroneous for the trial court to use calculations inconsistent with the guidelines to determine Tim's net income.

Because I would affirm the trial court's findings as sufficient for the evidence presented, I respectfully dissent from this reversal and remand "for more accurate findings."